766 So.2d 305 (2000)
AMERICAN AIRLINES, INC., Appellant,
v.
Libardo Abraham MEJIA, Appellee.
No. 4D99-1719.
District Court of Appeal of Florida, Fourth District.
March 1, 2000.
*306 Matthew J. Conigliaro, Emmet J. Schwartzman, and Wendy F. Lumish of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Miami, for appellant.
Ivan F. Cabrera, Richard J. Roselli and Kelley B. Gelb of Krupnick, Campbell, Malone, Roselli, Buser, Slama & Hancock, P.A., Fort Lauderdale, for appellee.
FARMER, Judge.
We have in hand a probate order determining that appellee was the spouse of the deceased. This determination arises in the midst of a wrongful death action in federal court in which his claim to be the spouse is being contested by appellant, the defendant in the federal court action. We reverse.
Carmen Cabrejo was a flight attendant for American Airlines (American). In December 1995, American Flight 965 crashed en route from Miami to Cali, Colombia. Carmen, a native of Colombia, died in the crash. At the time of her death she had five living siblings. She also had a "permanent companion," appellee Libardo Mejia. Claiming that he was Cabrejo's "common-law" husband, Libardo filed the wrongful death action in the United States District Court for the Southern District of Florida against American. He alleged that, as Carmen's common-law husband, he was her "surviving spouse" under the Florida Wrongful Death Act (WDA).[1] American filed a motion for partial summary judgment on all of Libardo's claims, arguing that he was not Carmen's spouse under Colombian law and also within the meaning of WDA. The federal court stayed the action. Meanwhile Libardo filed the present probate proceeding, seeking a determination that he is Carmen's surviving spouse.
Libardo acknowledged that he and Carmen never participated in a formal, civil or religious ceremony of marriage. He argued, however, that they were entitled under Colombian law to claim the status of "Unión Marital de Hecho" (unión).[2] This status, he contends, equates with a common law marriage in the United States and thus makes him Carmen's surviving spouse under Florida law. Libardo adduced evidence that he and Carmen lived together, owned seven properties together, and had reciprocal willsall in Colombia.
American argued that an unión should be distinguished from formal and common law marriages. It pointed out that Colombia itself treats a formal marriage under its law differently from the informal unión enjoyed by Carmen and Libardo, and that under its law an unión is not considered a marriage at all, and its partners are not considered spouses. Alternatively, American argued that even if the unión could be recognized as a marriage under Florida law, Carmen and Libardo's unión would then be bigamous because she was still formally married to another man under Colombian law.[3] The trial judge found as a matter of law that an unión "is a marriage which a Florida Court must recognize as a valid marriage." We disagree.[4]
*307 We begin with the proposition that the meaning and effect of the law of a foreign nation is a question of law as to which our review is de novo.[5]Transportes Aereos Nacionales, S.A. v. De Brenes, 625 So.2d 4 (Fla. 3rd DCA 1993), review denied, 632 So.2d 1025 (Fla.1994), cert. denied, 512 U.S. 1222, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994) (trial court's determination of foreign law treated as ruling on question of law over which appellate court exercises plenary review). We also follow the definitions in the controlling Florida statute as to what constitutes a marriage and who will be considered a spouse. Section 741.212 provides as follows:
"For purposes of interpreting any state statute or rule, the term `marriage' means only a legal union between one man and one woman as husband and wife, and the term `spouse' applies only to a member of such a union."
§ 741.212(3), Fla. Stat. (1999). By its clear text this definition controls determinations of marriage and the related question of who is a spouse when the question arises under the Florida Probate Code and WDA. It applies to "any state statute." [e.s.] Under the plain meaning of this text, the unión of Carmen and Libardo will be considered a marriage in Florida if it constitutes "a legal union between one man and one woman as husband and wife" [e.s.] under Colombian law; and conversely Libardo will be deemed a spouse of Carmen only if their unión is a marriage.
Both sides offered the relevant Colombian law, along with translations and exegeses by experts in its jurisprudence. We have examined these materials de novo. It is apparent upon such a study that the explanation of Libardo's expert does not materially contradict the explanation offered by American's on the essential issue i.e., whether an unión is a marriage under Colombian law and thus whether Libardo is therefore a spouse.
The law of Columbia distinguishes between marriage and unión marital de hecho. Under its positive law, marriage is "a solemn contract by which a man and a woman join for the purpose of living together...." Colombian Civil Code (CCC), Art. 113. A marriage is created "by the free and mutual consent of the contracting parties, declared before a legally competent official, in the manner and with the solemnities and requirements established by this Code...." CCC Art. 115. A contract is solemn when it "is subject to adherence with certain special formalities, so that without them there would be no resulting civil effect." CCC Art. 1.500. A civil marriage is terminated by the death of a spouse or by a legally decreed divorce. CCC Art. 152. Children born of a marriage are considered legitimate, while a child born to permanent companions is considered extramarital, and the father must formally and voluntarily recognize the child as his. Affidavit of Juan Luis Moreno Quijano, at 19.
The partners to a marriage acquire the civil status of "spouse," which entails certain rights and obligations. Decree No. 1260 of 1970. Spouses are obligated to be faithful and assist one another, are entitled to joint control of their household, and must live together in a residence established for their home. CCC Art. 176, 177, 178, 179. Significantly for our purposes, a married spouse may not marry another *308 person. CCC Art. 260. Spouses have the right of support. CCC Art. 411. Through their marriage, they create an estate known as a "conjugal society," which itself may be dissolved only by death, dissolution of marriage, a legal separation decreed by law, a separation of assets by legal decree, or by a public document executed before a notary. CCC Art. 180. Each spouse has the right of inheritance from the other. CCC Art. 1.046 and 1.047. A needy surviving spouse has a right to a "conjugal share" from the separate estate of the deceased spouse. CCC Art. 1.230.
Under Colombian law, an unión is "the union between a man and a woman, who although unmarried [e.s.] create a permanent and singular life in common..." Art. 1, Law 54 of 1990. The partners who create an unión become "permanent companions to each other." Id. No formalities are necessary to establish an unión, the fact of which may be demonstrated by the ordinary rules of evidence. Art. 4, Law 54 of 1990. An unión is dissolved by, among other things, the simple fact of one of the permanent companions marrying another person. Art. 5(b), Law 54 of 1990. The effect of establishing an unión is to create a presumptive "patrimonial society"[6] between the companions upon the condition that the unión has existed for not less than 2 years. Art. 2, Law 54 of 1990. Unlike a surviving spouse of a marriage, a surviving permanent companion has no right of inheritance in the personal estate of the deceased companion. Arts. 5-6, Law 54 of 1990.
As we have seen, the unión marital de hecho was codified by Law 54 of 1990. The Colombian Constitutional Court has explained the historical background of Law 54 of 1990 as follows:
"The Civil Code provides for the establishment of conjugal society solely by the mere fact of matrimony.... This is a society of community property....
"Contrary to above, the [Civil] Code and the laws prior to Law 54 of 1990 did not have any similar provisions with respect to concubinage.[[7]] This is logical if one takes into account the prevailing moral climate at the time that the [Civil] Code of Colombia was adopted, and those circumstances explain the unjust legal regulations that were especially damaging to women and to biological or extra-matrimonial children.
"By the middle of this century, the jurisprudence of the Supreme Court of Justice was entrusted with beginning the process of establishing justice in the case of free unions and on behalf of women, who are generally the weaker half of the relationship, due to financial, cultural or social factors in general.... In a country where approximately half of the unions are de facto unions, it was natural that the laws that elevated the status of married women and biological children would motivate the courts to come to the defense of the concubine.

. . .
"`[C]oncubinage does not generate, as does matrimony, a society of assets that the law hastens to recognize and regulate. However, based on equity, it is [submitted] that a conjunction of interests by the lovers, whether deliberate or not, and a lengthy common work endeavor could constitute a de facto society, which is almost always a product of circumstance more than of reasoned and voluntary activity....'
. . .
"[I]t is evident that the provisions intended to prevent the coexistence of two *309 societies of community property pursuant to general title, one resulting from matrimony and the other from de facto marital union, are based on the rule established by ... Article 2082 of the Civil Code [stating] `Likewise, all societies of community property pursuant to general title are prohibited except between spouses.'" [e.s.]
Judgment C-239 of May 1994.
Our explication of these differences between a marriage and an unión under Colombian law and this historical background surely demonstrate of their own force why the Colombian unión under Law 54 of 1990 cannot be considered a marriage for purposes of Florida law, especially under section 741.212(3). The principal difference for our purposes is that marriage is a solemn contract dissoluble only by death or divorce, while an unión is an informal circumstance that may be ended simply by one of the permanent companions marrying someone else. The children born of marriage need no recognition to be deemed legitimate, while the children born during an unión are deemed extramarital and must be formally recognized by their father.
As the Colombian Constitutional Court itself explained about the unión under Law 54 of 1990:
"There is an immense gap between this and the establishment of the same rights and obligations that exist between spouses. Suffice it to bear in mind that the mere decision of one of its members is sufficient to put an end to a de facto marital union, something that does not occur in matrimony.

"In summary, to maintain that between permanent companions there exists a relationship identical to that which binds spouses is an assertion that would not hold up to the slightest scrutiny, as it is tantamount to claiming that a true matrimony could be celebrated outside the jurisdiction of the State, and that, at the same time, [the State] could impose regulations that would go against [the de facto union's] essential nature, which is nothing more than that of being a free union." [emphasis supplied]
Judgment C-239 (May 1994).
Just two years after that opinion, the Constitutional Court again addressed the subject and reaffirmed the same conclusion:
"The petitioner has requested that the Constitutional Court reform a series of [laws] relative to spouses, the conjugal society, the conjugal portion, etc., and that [these laws] should also include permanent companions.
"[The petitioner] bases his [contentions] on [the argument] that, in his opinion, the Constitution established equality between matrimony and free union. Thereby, attributing rights or obligations to spouses that are not established for permanent companions, implies discrimination due to family origin, prohibited under [the Constitution].
"It is true that Article 42 of the Constitution recognized that the family is formed `by natural or legal ties, by the free determination of a man and a woman to contract matrimony or by the responsible decision to form it.' However, to maintain based on the above that the Constitution established equality between matrimony and free union is a major leap. Matrimony is different from free union and, therefore, the legal status of spouses and permanent companions is also different." [emphasis supplied]
Judgment No. C-174/95.
Accordingly, we hold that the unión between Carmen and Libardo was not "a legal union between one man and one woman as husband and wife" within the meaning of Florida law, and therefore they were not the spouses of one another.
REVERSED.
KLEIN and STEVENSON, JJ., concur.
NOTES
[1] See §§ 768.16-768.27, Fla. Stat. (1995).
[2] The English translation is Marital Union in Fact.
[3] Carmen went through a marriage ceremony with Elias Gomez in Panama in 1978. But nine years earlier Gomez had been married to a woman still living, from whom he had not been divorced. Carmen and Gomez ultimately separated, and she then married Humberto Gonzalez, who died in 1985. Her unión with Libardo came still later.
[4] The trial judge also found as a factual matter that Carmen's earlier marriage to Gomez was null and void because Gomez was still married when they celebrated their marriage. We have no basis to disturb his finding in this regard, which rests on competent substantial evidence. Our disagreement with the trial court is only with his determination that an unión is a marriage.
[5] We also recognize the basic principle that a valid marriage according to the law of a foreign nation will be recognized as such in the United States. See generally Montano v. Montano, 520 So.2d 52, 52-53 (Fla. 3d DCA 1988). Moreover, although Florida no longer recognizes the validity of common law marriages contracted in this state after 1968, it will respect a common law marriage validly created in a jurisdiction recognizing such marriages. See § 741.211, Fla. Stat. (1999); and Anderson v. Anderson, 577 So.2d 658, 660 (Fla. 1st DCA 1991).
[6] In civil law, patrimony refers to "all of a person's assets and liabilities that are capable of monetary valuation and subject to execution for a creditor's benefit." BLACK'S LAW DICTIONARY 1148 (7th ed.1999).
[7] The Colombian court defined concubinage as "the result of ostensible and permanent sexual relations between a man and a woman who are not married to each other and, as such, it is a de facto situation." Judgment C-239 of May 1994.