Luz M. GONZALEZ–JIMENEZ DE RUIZ, on her behalf and on behalf of her minor children, Luis Fernando Ruiz Gonzalez, Jose David Ruiz Gonzalez, Melanie Ruiz Gonzalez, and Araika Ruiz Gonzalez, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 5:00CV371OC10GRJ.

United States District Court, M.D. Florida, Ocala Division.

Nov. 14, 2002.

Maria H. Sandoval, Law Office of Maria H. Sandoval, San Juan, PR, for Plaintiff.

Reginald Luster, Ralph J. Lee, Ronnie S. Carter, U.S. Attorney's Office Middle District of Florida, Jacksonville, FL, Lisa E. Bhatia-Gautier, U.S. Attorney's Office District of Puerto Rico, San Juan, PR, for Defendant.

## ORDER

HODGES, District Judge.

The United States Magistrate Judge has issued a report (Doc. 47) recommending that the Defendant's "Motion to Dismiss or, in the alternative, for Summary Judgment" (Doc. 32), be granted.

The Plaintiffs have filed objections to the Magistrate Judge's findings (Doc. 50) (Doc. 54). Specifically, the Plaintiffs assert the following objections:

(1) that the law of Puerto Rico recognizes common law marriages insofar as it

recognizes a concubine's right to share in jointly-owned property;

(2) that the Plaintiffs have a right to sue for "loss ·of associational benefits" (Doc. 50);

(3) that the Magistrate Judge erroneously concluded that the Defendant's conduct was "less than outrageous" and thus insufficient to give rise to a claim for intentional infliction of emotional distress; and,

(4) that the Magistrate Judge erroneously concluded that the Plaintiffs' diabetes and/or emotionally triggered asthma do not constitute a "physical impact," which is necessary to give rise to a claim for negligent infliction of emotional distress pursuant to Florida law.

First, as to the Plaintiffs' assertion that the law of Puerto Rico recognizes common law marriages insofar as the law of Puerto Rico recognizes a concubine relationship for purposes of property distribution, the Plaintiffs' objection is due to be overruled. As correctly cited in the Magistrate Judge's report and recommendation, the law of Puerto Rico does not recognize common law marriages.[1]

Second, as to the Plaintiffs' assertion that they have a "right to sue for the loss of associational benefits," the objection is due to be overruled. The Plaintiffs have failed to cite any controlling authority to support their objection, and Florida law provides that upon the death of the spouse or parent, a cause of action for loss of consortium is abated.[2]

Third, as to the Plaintiffs' objection that the Defendant's conduct was "outrageous," the objection is due to be overruled. Whether conduct is deemed "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," is determined by the Court as a matter of law.[3]

And fourth, as to the Plaintiffs' objection that diabetes and emotionally triggered asthma constitute a "physical impact" because "[m]odern day psychiatry recognizes that changes in body chemistry parallel changes in the mind," the objection is due to be overruled. Florida law is clear that "intangible, mental injuries are insufficient to meet the physical injury requirement." [4]

The Defendant has filed "limited objections" to the Magistrate Judge's report and recommendation (Doc. 53). Because the Defendant's objections do not affect the substance of the report and recommendation, the Defendant's objections are due to be overruled.

The Court does note, however, that Plaintiff "Luis Fernando Ruiz Gonzalez" is also referred to in the record as "Luis Fernando Caballero Gonzalez." And, the Court also notes that although the report and recommendation states that hospital officials informed Plaintiff Luis Gonzales

---

1. *U.S. v. Panzardi–Alvarez,* 678 F.Supp. 353, 356 n. 4 (D.Puerto Rico 1988). *See also Delgado v. Bowen,* 651 F.Supp. 1320, 1321 (D.Puerto Rico 1987) (stating that "the laws of Puerto Rico do not recognize common-law marriages," and citing, Civil Code, 31 L.P.R.A. sec. 221). In *Delgado,* the Court also stated that although the law of Puerto Rico recognizes a concubine's right to a share of jointly-owned property, the law of Puerto Rico does not recognize a concubine as a "spouse" for the purposes of the distribution of intestate personal property. *Id.* at 1321, 1322.

2. *ACandS, Inc. v. Redd,* 703 So.2d 492, 494 (3d DCA 1997). A spouse or child may recover for loss of support and services pursuant to Florida's Wrongful Death Act, but in this action, the Plaintiffs have abandoned their claims under the Wrongful Death Act.

3. *Metropolitan Life Ins. Co. v. McCarson,* 467 So.2d 277, 279 (Fla.1985).

4. *R.J. & P.J. v. Humana of Florida, Inc.,* 652 So.2d 360, 364 (Fla.1995).

that Mr. Ruiz's spine and neck were broken by prison personnel, the Complaint (Doc. 1) reflects that it was Mr. Ruiz who informed Plaintiff Luis Gonzales of his injuries, and that it was Mr. Ruiz's personal conclusion that prison personnel had acted crudely.

Upon due consideration of the Plaintiffs' and Defendant's objections, and upon an independent examination of the file, it is ordered that:

(1) the Plaintiffs' objections to the report and recommendation of the Magistrate Judge (Doc. 50) (Doc. 54) are OVERRULED;

(2) the Defendant's objections to the report and recommendation of the Magistrate Judge (Doc. 53) are OVERRULED;

(3) the report and recommendation of the Magistrate Judge (Doc. 47) is adopted, confirmed, and made a part hereof;

(4) the Defendant's "Motion to Dismiss or, in the alternative, for Summary Judgment" (Doc. 32) is GRANTED;

(5) the Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiffs; and,

(6) the Clerk is further directed to terminate any pending motions, and close the file.

IT IS SO ORDERED.

1. Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

2. This case was originally filed in the United States District Court for Puerto Rico on February 17, 2000 but was subsequently transferred to this Court pursuant to 28 U.S.C. § 1404. (*See,* Doc. 15.).

## REPORT AND RECOMMENDATION [1]

JONES, United States Magistrate Judge.

Pending before the Court is Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment (Doc. 32). For the following reasons, the Defendant's motion is due to be **GRANTED.**

### I. BACKGROUND & FACTS

Plaintiffs' claims in this case are brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2672 *et seq.,* against the United States, arising from the "death of Jose Miguel Ruiz, an inmate entrusted to the care and custody of the Attorney General for the United States and the U.S. Bureau of Prisons ("BOP")." [2] The action is brought both on behalf of Luz M. Gonzalez–Jimenez De Ruiz ("Ms.Gonzalez"), who is alleged to be the common law wife and the widow of the BOP inmate, Jose Miguel Ruiz ("Mr. Ruiz"), and on behalf of the four minor children of Mr. Ruiz.[3]

A review of the Complaint, the affidavits filed by Plaintiffs,[4] and the other matters of record,[5] read in the light most favorable to the Plaintiffs, discloses the following facts.

Mr. Ruiz was imprisoned at the Metropolitan Detention Center in Guaynabo, Puerto Rico in April of 1997. Within one month of Mr. Ruiz's imprisonment in Puer-

3. One of the children, Luis Fernando Ruiz Gonzalez, is not Mr. Ruiz's biological or adopted son. (Doc. 45, Ex. 4.)

4. Among others, Plaintiffs filed the affidavit of Luis Fernando Ruiz Gonzalez. (Doc. 45, Ex. 4.)

5. Plaintiffs also filed answers to interrogatories by Ms. Gonzalez (Doc. 45, Ex. 7), Luis Fernando Ruiz Gonzalez (Doc. 45, Ex. 8), Melanie Ruiz Gonzalez (Doc. 45, Ex. 9), Araika Ruiz Gonzalez (Doc. 45, Ex. 10) and Jose David Ruiz Gonzalez. (Doc. 45, Ex. 11.)

to Rico, Mr. Ruiz was transferred to the custody of BOP officials in the state of Florida. Initially, Mr. Ruiz was transferred to a federal detention center in Tallahassee, Florida, and, shortly thereafter, he was transferred permanently to the Coleman Federal Correctional Institution ("Coleman FCI") in Coleman, Florida. Immediately following his arrival at Coleman FCI, Mr. Ruiz complained of severe back pain. Despite these complaints, Mr. Ruiz was denied medical care. Instead, prison officials viewed Mr. Ruiz's complaints as disruptive to the prison community and, accordingly, placed Mr. Ruiz in "segregation." The Plaintiffs allege that, during this time, Mr. Ruiz was prohibited from contacting his family.

Due to the family's concerns regarding Mr. Ruiz's health, Mr. Ruiz' son, Luis Fernando Ruiz Gonzalez ("Luis"), traveled to Coleman FCI to visit his father. Upon arriving at Coleman FCI, however, prison officials refused to permit Luis to visit Mr. Ruiz, Prison officials claimed that Mr. Ruiz did not wish to see Luis, but assured Luis that Mr. Ruiz's health was "fine." Despite the refusal of prison officials to permit Luis to see Mr. Ruiz, Luis remained in Florida in the hopes that he would eventually be granted permission to visit his father. While in Florida, Luis was advised, by a non-prison official, that Mr. Ruiz was at the Leesburg Hospital in Lake County, Florida, receiving treatment for cancer.

On June 4, 1997, Luis visited Mr. Ruiz at the Leesburg Hospital, where Luis was informed that Mr. Ruiz had terminal cancer. Moreover, hospital officials informed Luis that Mr. Ruiz's spine and neck bones were "broken...because [prison] personnel had crudely attempted to manipulate [Mr. Ruiz's] spine because they mistakenly believed he was suffering from a condition of 'pinched nerves.'"

From April 1997 through June 4, 1997, Mr. Ruiz's family made several attempts to contact Coleman FCI officials, seeking information regarding Mr. Ruiz's medical condition and treatment thereof. According to Plaintiffs, these attempts were fruitless.

On June 5, 1997, Mr. Ruiz was transferred—without notification to his family—to the federal BOP medical facility in Fort Worth, Texas. Plaintiffs allege that, while in custody at the Fort Worth, Texas facility, Mr. Ruiz received substandard medical treatment. Mr. Ruiz died nine days after his transfer from the Leesburg hospital to the Fort Worth, Texas facility. Plaintiffs contend that, during the nine days prior to Mr. Ruiz's death, officials from the BOP refused to permit Mr. Ruiz's children to visit their father. Moreover, Plaintiffs assert that BOP officials neglected to inform Mr. Ruiz's family of Mr. Ruiz's death.

After Mr. Ruiz's death, his remains were transported from Fort Worth, Texas to his home in Puerto Rico. There was, however, a nine-day delay in the transport of Mr. Ruiz's body to his family, which resulted in the partial decomposition of Mr. Ruiz's remains.

In Defendant's Motion to Dismiss Or, In The Alternative, For Summary Judgment ("Motion to Dismiss" or "Motion for Summary Judgment") Defendant primarily challenges Plaintiffs' capacity to sue and standing under the Florida Wrongful Death Act. (Docs. 33 & 34.)

In Plaintiffs' Opposition To The Government's Motion to Dismiss Or, In The Alternative, For Summary Judgment ("Response")(Doc 45), Plaintiffs advise the Court that they have abandoned their wrongful death claims because their expert, Dr. Michael Grossbard, reports that Mr. Ruiz's lung cancer could *not* have been diagnosed in the federal facility in Puerto Rico and, thus, there was no breach of the duty of care by the Defendant in Puerto

Rico.[6] Notably, Dr. Grossbard does not opine that any failure to diagnose or failure to treat Mr. Ruiz was the cause of his death, but only that Mr. Ruiz's survival may have been longer if he had been given certain treatment. Dr. Grossbard, therefore, concedes that Mr. Ruiz had incurable lung cancer and, thus, that the alleged negligence by Defendant did not cause the death of Mr. Ruiz but only shortened his survival.

Because of this fact, Plaintiffs assert that they have viable claims against the Defendant independent of their now abandoned wrongful death claims. These claims are characterized by Plaintiffs as claims for: (1) the loss of association benefits by Ms. Gonzalez and her children, and (2) recovery of damages for the emotional suffering experienced by Ms. Gonzalez and her children as a result of: (i) observing the suffering and death of Mr. Ruiz, (ii) the denial of access to Mr. Ruiz prior to his death, and (iii) the delay in transporting Mr. Ruiz's body to Puerto Rico.

## II. SUMMARY JUDGMENT STANDARD

While Defendant styles its motion as a "Motion to Dismiss Or, In The Alternative, For Summary Judgment," because the Court, by necessity, will address matters outside of the four corners of the Complaint in order to resolve the motion, the proper standards to apply are the standards set forth in Rule 56 of the Federal Rules of Civil Procedure.

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party."[7] As the Supreme Court held in *Celotex Corp. v. Catrett*, the moving party bears the initial burden of informing the court of the basis of the motion and of establishing the nonexistence of a triable issue of fact.[8]

If the movant is successful on this score, the burden of production shifts to the non-moving party, who must then come forward with "sufficient evidence of every element that he or she must prove."[9] The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[10] In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[11]

## III. LEGAL ANALYSIS

As an initial matter, before addressing the issues of standing and capacity to sue, raised by the Defendant, and the merits of

---

**6.** Doc. 45 at 3; *Id.* Ex. 1.

**7.** *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988).

**8.** 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**9.** *Rollins v. TechSouth,* 833 F.2d 1525, 1528 (11th Cir.1987).

**10.** *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**11.** *Id.* at 587, 106 S.Ct. 1348

Plaintiffs' claims, the Court must determine the choice of law to be applied.

## A. *Choice of Law*

 Under the FTCA, the United States "may be held liable for personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States acting within the scope of his employment under circumstances where the United States, if a private person, could be responsible to the claimant in accordance with the law of the place where the act or omission occurred." [12] Under the FTCA, the "whole law, including the choice of law rules, of the state where the alleged act or omission occurred governs the rights and liabilities of the parties." [13] Thus, because the Plaintiffs' causes of action arise from acts or omissions in the state of Florida, Florida's choice of law rules apply to this action. [14]

 Florida has adopted the "most significant relationships test" for causes of action that arise out of a tort. [15] Under the most significant relationships test, "all substantive issues will be determined in accordance with the law of the state having the most significant relationship to the occurrence and the parties. The place of injury still determines which state's law applies, unless some other state has a more significant relationship to the issues." [16]

 In the instant case, the great majority of the alleged acts and omissions occurred in the state of Florida. Because Plaintiffs have conceded that there was "no breach of the duty of care in Puerto Rico" it follows that Florida and Texas are the only remaining jurisdictions with a connection to the Plaintiffs' cause of action. Moreover, it is evident based on Plaintiffs' allegations that Florida is the locus of the majority of the alleged conduct. It was in Florida at Coleman FCI where Mr. Ruiz became ill, was initially diagnosed with cancer, and subsequently received the majority of his medical treatment. In contrast, Mr. Ruiz received only nine days of medical care in the state of Texas. [17]

Additionally, while not binding upon this Court, the District Court in Puerto Rico, concluded that the causes of action in this case were most closely related to acts or omissions that occurred in the state of Florida. As the District Court in Puerto Rico concluded "Florida is the situs where Plaintiffs allege that Jose Miguel Ruiz–Fernandez ("the decedent") was mistreated, misdiagnosed, and subjected to substandard medical care from April 17, 1997 to June 3, 1997." [18] Accordingly, for these same reasons, the Court determines that the laws of the state of Florida should be applied to this matter.

---

12. *Hensley v. United States*, 728 F.Supp. 716, 721 (S.D.Fla.1989) (also citing 28 U.S.C. § 1346(b)).

13. *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *see also id.*

14. Plaintiffs concede that the "negligence law of Florida" applies to this case, as Mr. Ruiz's death was not the result of a "breach of duty of care in Puerto Rico," but mainly a result of events in the state of Florida. (Doc. 45 at 3.) A review of Plaintiffs' response to Defendant's Motion to Dismiss, discloses that the great majority of Plaintiffs' claims arise out of events that took place at Coleman Federal Correction Institute, located in the state of Florida. (Doc. 45 at 2–3.) Thus, Florida state law would be applicable under the FTCA.

15. *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla.1980); *see also, Garcia v. Public Health Trust of Dade County*, 841 F.2d 1062, 1064 (11th Cir.1988).

16. *Bishop, Id.*

17. Doc. 45 at 5.

18. Doc. 15 at 4.

## B. *Standing And Capacity To Sue*

■ The focus of Defendant's challenge to Plaintiffs' claims is on whether Plaintiffs have standing to bring the claims asserted and on whether Ms. Gonzalez has the capacity to sue on behalf of her children and herself. A majority of Defendant's argument is, however, premised on the assumption that Plaintiffs' claims are controlled by Florida's Wrongful Death Act, Florida Statutes, §§ 768.16–768.26. Defendant's position is understandable in view of the fact that this case primarily was a wrongful death action until Plaintiffs abandoned these claims when they filed their Response to the motion for summary judgment. Accordingly, because Plaintiffs have expressly abandoned any claims under the Florida Wrongful Death Act [19] and only assert claims relating to themselves and not to the decedent or the estate of the decedent, Defendant's arguments at pages 5–10 of its brief—while correct on the law—are not relevant to the Court's determination of whether the Plaintiffs have standing to sue or have the capacity to sue. Therefore, the Court must analyze these issues outside of the context of Florida's Wrongful Death Act.[20]

One of Defendant's challenges to Ms. Gonzalez' standing to sue is grounded on the argument that Ms. Gonzalez was not legally married to Mr. Ruiz. Notwithstanding this fact, Plaintiff argues that under Puerto Rico law, her union with Mr. Ruiz, while not contracted and solemnized, was a legal common law marriage. Ms. Gonzalez, therefore, asserts that she has standing and is a proper party to sue the Defendant in this matter.

■ Puerto Rico law governs the validity of Plaintiff's marriage to Mr. Ruiz. Under Florida law, a "valid marriage according to the law of a foreign nation will be recognized as such in the United States." [21] Further, while Florida "no longer recognizes the validity of common law marriages," common law marriages "validly created in a jurisdiction recognizing such marriages" will be recognized in Florida.[22]

■ A review of the applicable law of Puerto Rico discloses, however, that Puerto Rico does not recognize a common-law marriage.[23] Accordingly, this Court concludes that, as a matter of law, Ms. Gonzalez cannot be considered a surviving spouse of Mr. Ruiz.

This determination is relevant for two reasons, unrelated to the Wrongful Death Act. First, because Ms. Gonzalez is not the

---

**19.** Although the Plaintiffs report that they have abandoned their wrongful death claims because they cannot prove a breach of the duty of care in Puerto Rico, it is evident that the real reason the claims have been abandoned is because Plaintiff's expert, Dr. Grossbard, opines that Mr. Ruiz died because of incurable lung cancer and not because of the negligence of the Defendant. Under Florida law, where, as here, the plaintiff cannot prove that with proper diagnosis and treatment it was "more likely than not" that the plaintiff would have survived, there is no cause of action under Florida's Wrongful Death Act. *See, Tappan v. Florida Medical Center,* 488 So.2d 630, 631 (Fla.Dist.Ct.App.1986).

**20.** Although the Court's standing and capacity to sue analysis may be purely academic in

view of the fact that the Court ultimately concludes, as discussed later, that Plaintiffs do not have viable claims under Florida law, the issue of Ms. Gonzalez's marital status is relevant to whether the claims alleged are recognized under Florida law.

**21.** *See* Fla. Stat. § 741.212; *see also American Airlines v. Mejia,* 766 So.2d 305, 307, n. 5 (Fla.Dist.Ct.App.2000).

**22.** *Id.*

**23.** *See* Civil Code, 31 L.P.R.A. sec. 221; *see also U.S. v. Panzardi–Alvarez,* 678 F.Supp. 353, 356 n. 4 (D.Puerto Rico 1988); *Sanabria v. Secretary of HEW,* 390 F.Supp. 538 (D.Puerto Rico 1975).

surviving spouse she cannot prosecute a claim for damages to the decedent under Florida's survivor statute, Fla. Stat. § 46.021, assuming there is a claim to prosecute.[24] Secondly—and as an analogue to whether Ms. Gonzalez could pursue a survivor action—because Ms. Gonzalez is not the spouse of Mr. Ruiz she cannot pursue a claim for loss of consortium, as discussed later.

Separate from the Defendant's standing argument, the Defendant advances the theory that because Ms. Gonzalez is not a proper representative under Florida law to sue for the minor children—each of whom do not have the capacity to sue on their own behalf—this action should be dismissed. The Defendant's argument, however, once again, is only applicable to the prosecution of a claim under the Florida Wrongful Death Act and not to the prosecution of direct negligence claims by "family members."

■ Capacity to sue, which is governed by Fed. R. Civ. P. 17, is "a party's personal right to litigate in federal court."[25] Capacity to sue differs from standing, as capacity to sue "speaks to a party's legal qualification, such as legal age, that determines one's ability to sue or be sued.

■ As an initial matter, one of the minor children, Luis Fernando Ruiz Gonzalez ("Luis"), was born on April 18, 1980[26] and, as such, he was older than eighteen years of age—the age of majority in Florida—at the time that this lawsuit was initiated on February 17, 2000. Pursuant to Fed.R.Civ.P. 17(b), however, an individual's capacity to sue is "determined

by the law of his domicile." Thus, Luis Fernando Ruiz Gonzalez's capacity to sue, as a domiciliary of Puerto Rico, must be determined under Puerto Rico law. The age of majority under Puerto Rico law is 21.[27] Therefore, Luis—like Jose, Melanie and Araika—does not have the capacity to sue directly and may only prosecute his claims through a representative.

Because the Plaintiffs assert common law negligence claims against the Defendant, and it has been determined that the four minor Plaintiffs lack the capacity to sue in this matter, the Court must determine whether the four minor Plaintiffs are properly represented by Ms. Gonzalez for purposes of bringing the claims in this case. If it is determined that Ms. Gonzalez cannot prosecute the claims on behalf of her children because she does not have the capacity to sue on their behalf, the Court need go no further in its analysis and need not address whether the claims brought in this case are viable under Florida law.

■ Pursuant to Fed.R.Civ.P. 17(c), an "infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem." Typically, "the next friend who sues on behalf of the minor is that minor's parent."[28] Ms. Gonzalez, as the natural mother of the four minor Plaintiffs in this action, however, was not required to file the current lawsuit as a "next friend." When a parent "brings an action on behalf of a child, and it is evident that the interests of each are the same, no need exists for someone other than the parent to rep-

---

**24.** *See, e.g. Tappan,* 488 So.2d 630 (recognizing that wife could bring claim under survivor statute where the malpractice did not cause the death and hence a claim could not be prosecuted under the Wrongful Death Act).

**25.** *Gonzalez v. Reno,* 86 F.Supp.2d 1167, 1183 (S.D.Fla.2000).

**26.** Doc. 45, Ex. 8.

**27.** *Valedon Martinez v. Hospital Presbiteriano Comunidad, Inc.,* 806 F.2d 1128, 1133 (1st Cir.1986).

**28.** *Gonzalez,* 86 F.Supp.2d at 1185.

resent the child's interests under Rule 17(c)." [29]

 Here, Ms. Gonzalez is a party to the action. Moreover, Ms. Gonzalez and her children allege identical claims against the Defendant, assert identical factual bases for their claims, and seek money damages from the Defendant. It is, thus, clear that the best interests of the children coincide fully with Ms. Gonzalez's interest in obtaining a judgment against the Defendant. As such, the Court concludes that Ms. Gonzalez was not required to file this lawsuit, on behalf of the four minor Plaintiffs, as a "next friend."

Additionally, even if the Court determined that Ms. Gonzalez's failure to file suit as a "next friend" was error, it would not be proper for the Court to dismiss this cause of action on that basis. Both federal courts and Florida state courts have determined that the failure to appoint a "next friend" or guardian ad litem does not necessitate dismissal of a lawsuit.[30] Rather, "if it should appear to the court that a party to an action is an infant and not otherwise represented, the court shall appoint a guardian ad litem for such infant or shall make such order as it deems proper for the protection of the infant." [31] Thus, even if the Court concluded that the four minor Plaintiffs were required to have a "next friend" or guardian ad litem appointed in this case, the Court could order such an appointment without dismissing this

case. Accordingly, to the extent that the Defendant argues that this this cause should be dismissed, as to the four minor Plaintiffs, due to lack of capacity to sue, that argument is rejected.

Having determined that Plaintiff has standing and capacity to sue on behalf of her minor children, the Court must determine whether the claims brought by Plaintiffs are cognizable under Florida law and, if so, whether there are disputed issues of fact that would preclude the entry of summary judgment. The Court will, therefore, address the merits of each of Plaintiffs' substantive claims in turn.

## C. *Loss Of Associational Benefits*

Without citation to any legal authority to support their claims, Plaintiffs characterize their claims against the Defendant as claims for "loss of associational benefits." Florida law does not recognize claims for loss of associational benefits but does recognize claims for loss of companionship, services and affection under the doctrine of loss of consortium. Thus, because loss of associational benefits is another way of describing a claim for loss of consortium, the Court will analyze Plaintiffs' claims under Florida law applicable to claims for loss of consortium.

Under Florida law, Plaintiffs' claims for loss of consortium must fail for two primary reasons.

---

**29.** *Id.*

**30.** *Id.* (stating that, if at any point, the district court feels that the minor is not being properly represented, the court must address that issue and appoint a representative). The Eleventh Circuit, in *Burke v. Smith,* determined that an Alabama state law regarding capacity to sue was applicable where there was no federal law that conflicted with the state law. 252 F.3d 1260, 1264 (11th Cir. 2001). In *Burke,* the court determined that an Alabama state law "concerning the settle-

ment of a minor's claims," was not in conflict with Rule 17(c), and, therefore, was applicable in federal court. *Id.* at 1265. This Court, therefore, in accordance with the holding in *Burke,* addresses Florida state law on this issue.

**31.** *Kingsley,* 623 So.2d at 780, 784 (stating that the "disability of non-age can be cured by the subsequent appointment of a next friend or guardian"); *see also Gonzalez,* 86 F.Supp.2d at 1183.

First, under Florida law a cause of action for loss of consortium for injuries to a spouse or a parent is abated upon the death of the parent or spouse.[32] When the Florida Legislature enacted the Wrongful Death Statute it intended that, upon the death of a spouse or parent, the statute would serve as the sole cause of action to recover loss of consortium damages.[33] Therefore, even assuming the Plaintiffs were entitled to prosecute claims for loss of consortium, these claims ended upon the death of Mr. Ruiz.

Second, and more fundamentally, neither Ms. Gonzalez, nor her minor children, are entitled under Florida law to bring claims for loss of consortium. In *Tremblay v. Carter*,[34] the Court rejected claims for loss of consortium where, as here, the man and woman had lived together as a couple but were not married. The *Tremblay* court reasoned that, although the common law rule may be antiquated, "marriage has been the foundation of our nation's family life. Theologians consider marriage to be ordained by God, and secular authority has recognized its importance by subjecting it to comprehensive regulation."[35] Thus, when parties marry "each takes on new responsibilities and acquires new rights."[36] Accordingly, because Ms. Gonzalez was not married to Mr. Ruiz she does not have the right to bring an independent claim for loss of consortium.

Similarly, Florida law does not recognize an independent claim for loss of consortium brought by the children of a decedent, other than through a claim brought under the Wrongful Death Act.[37] Because Plaintiffs have chosen not to prosecute claims under the Florida Wrongful Death Act, neither Ms. Gonzalez nor her children have claims that are recognized under Florida law, and therefore, summary judgment in favor of Defendant with regard to Plaintiffs' claims for loss of associational benefits is due to be **GRANTED**.

### D. *Clams For Emotional Distress*

Plaintiffs assert three claims for "emotional suffering": (1) emotional suffering from observing the suffering and eventual death of Mr. Ruiz, (2) emotional suffering from the deception of BOP officials, who denied the family access to Mr. Ruiz before his death, and (3) emotional suffering from the delay in transporting Mr. Ruiz's body to Puerto Rico. Because Plaintiffs do not delineate whether the "emotional distress claims" are being prosecuted under a theory of negligent infliction of emotional distress or under a theory of intentional infliction of emotional distress,[38] the Court will analyze Plaintiffs' claims under both tort theories.

---

**32.** *See ACandS, Inc. v. Redd*, 703 So.2d 492, 494 (Fla.Dist.Ct.App.1997) (finding that a wife was barred from recovering damages for loss of consortium where her husband had died).

**33.** *ACands, Inc.*, 703 So.2d at 494.

**34.** 390 So.2d 816 (Fla.Dist.Ct.App.1980); *see also, Fullerton v. Hospital Corporation of America*, 660 So.2d 389 (Fla.Dist.Ct.App.1995)(following *Tremblay* ).

**35.** 390 So.2d at 818.

**36.** *Id.*

**37.** *Zorzos v. Rosen*, 467 So.2d 305, 307 (Fla. 1985).

**38.** The Federal Tort Claims Act waives sovereign immunity for intentional infliction of emotional distress, and therefore, Plaintiffs may prosecute claims under this theory if Florida law recognizes the tort of intentional infliction of emotional distress. *See, Baird v. Haith*, 724 F.Supp. 367, 376 (D.Md.1988). Because Florida law recognizes this tort a cause of action could be prosecuted against the United States when this tort occurred in Florida.

## 1. *Intentional Infliction of Emotional Distress*

The Supreme Court of Florida first recognized the tort of intentional infliction of emotional distress in *Metropolitan Life Insurance Company v. McCarson*.[39] The *McCarson* court held that an independent cause of action for intentional infliction of emotional distress lies where the alleged action was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" and to be regarded as atrocious and utterly intolerable in a civilized community.[40]

■■■■ The essential elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) proof that the conduct caused the severe emotional distress.[41] Only in extremely rare circumstances will courts uphold claims for intentional infliction of emotional distress.[42] The determination of whether a plaintiff has alleged conduct which meets the essential elements for a claim for intentional infliction of emotional distress is a matter of law to be decided by the court.[43]

After a careful review of the Plaintiffs' claims, and interpreting Plaintiffs' claims in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs cannot, as a matter of law, establish facts that rise to the level to support the tort of intentional infliction of emotional distress.

■■■■ Plaintiffs' factual allegations establish, at most, a series of BOP deceptions regarding Mr. Ruiz's terminal medical condition, the BOP's failure to provide Mr. Ruiz's family with reasonable access to Mr. Ruiz during his illness, the BOP's failure to inform Plaintiffs of Mr. Ruiz's death, the BOP's conduct in exposing Plaintiffs to Mr. Ruiz's pain and suffering due to substandard medical care, and the BOP's delay in transporting Mr. Ruiz's remains.[44] None of this conduct can be

39. 467 So.2d 277 (Fla.1985).

40. *Id.* at 279.

41. *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir.1990).

42. *See Williams v. City of Minneola*, 575 So.2d 683 (Fla.App.1991) (upholding a claim where police officers displayed grotesque pictures of a family member's dead body); *Dependable Life Insurance Co. v. Harris*, 510 So.2d 985 (Fla.Dist.Ct.App.1987) (claim upheld where insurance company made vicious threats to policyholders known to be ill and near bankruptcy).

43. *McCarson*, 467 So.2d at 278.

44. The following facts are alleged by Plaintiffs in support of a claim for intentional infliction of emotional distress: (a) sometime after May 13, 1997, a BOP official told a family friend that Mr. Ruiz was suffering from "back pain" and did not know why Mr. Ruiz had not telephoned his family; (b) the same BOP official, during the same conversation with a family friend, stated that Mr. Ruiz was in segregation but did not know the reason why; (c) the same BOP official later informed Mr. Ruiz's father that Mr. Ruiz was fine; (d) on May 19, 1997, Coleman FCI and BOP officials told Luis that Mr. Ruiz did not want to see him, but stated that Mr. Ruiz's health was fine, when Mr. Ruiz was at Leesburg Hospital receiving cancer treatment; (e) Luis visited Mr. Ruiz at Leesburg hospital and was "shocked" at Mr. Ruiz's condition; (f) on June 4, 1997, Ms. Gonzalez visited Mr. Ruiz at Leesburg Hospital, and she was distraught by Mr. Ruiz's condition and the treatment he had and was receiving; (g) prison officials refused to accept telephone calls from Mr. Ruiz's family members; (h) on June 5, 1997, BOP officials transferred Mr. Ruiz from Leesburg Hospital to a Fort Worth, Texas facility, without notifying his family; (i) BOP officials made it "extremely difficult" for Plaintiffs to visit Mr. Ruiz; (j) Luis and Ms. Gonzalez witnessed Mr. Ruiz receive substandard medical care in Florida and Texas; (k) the four minor children were not permitted to see

characterized as "atrocious" or "utterly intolerable in a civilized community."

It should be remembered that at all times when the events where occurring in this case, Mr. Ruiz was an inmate in a federal correctional facility. Thus, the suggestion that the BOP restricted access to Mr. Ruiz by visitors is neither shocking nor unexpected, as federal inmates are typically limited in receiving visitors.

Moreover, Plaintiffs' contention, that they suffered emotional distress from witnessing Mr. Ruiz suffer and die, is belied by their very argument that they were prohibited from visiting Mr. Ruiz. Notably, the medical evidence reveals that Mr. Ruiz's condition was terminal.[45] Thus, even assuming that Mr. Ruiz's medical care was substandard and that his cancer diagnosis was delayed by one month,[46] Plaintiffs inevitably would have witnessed Mr. Ruiz's illness and death. The Court, thus, concludes that Plaintiffs have failed to establish any actions of the Defendant, which could be characterized as beyond the "bounds of decency" and "utterly intolerable in a civilized community." While substandard medical care is regrettable and not to be tolerated—even in a federal correctional facility—the rendering of substandard medical care does not constitute the intentional infliction of emotional distress.

Further, the Court cannot conclude that a nine-day delay in transporting human remains from the state of Texas to Puerto Rico is an atrocious and unacceptable delay. Indeed, it appears that an autopsy was performed on Mr. Ruiz on June 14, 1997, the death certificate was signed on June 19, 1997, and Mr. Ruiz's remains were transported and received in Puerto Rico on June 20, 1997. (Doc. 11 at 10.) Assuming this time line to be accurate, the Defendant's conduct in transporting Mr. Ruiz's remains is far afield from the standard for intentional infliction of emotional distress.

Finally, mere deception, while unfortunate, does not amount to intentional infliction of emotional distress. Even if BOP officials lied to Plaintiffs about Mr. Ruiz's whereabouts and medical condition, such conduct does not rise to the level of being extreme or outrageous in nature. Accordingly, to the extent that Plaintiffs assert claims for intentional infliction of emotional distress, the Court finds that these claims are without merit and, therefore, summary judgment is due to be **GRANTED** in favor of the Defendant with regard to these claims.

### 2. Negligent Infliction of Emotional Distress

 Plaintiffs' claims for negligent infliction of emotional distress are similarly without merit under Florida law. Florida does not recognize the tort of negligent infliction of emotional distress. Rather, under Florida law, recovery of damages for negligent infliction of emotional distress is not permitted "unless the plaintiff manifests some physical injury as a result

---

their father before he died; (l) BOP officials failed to contact Plaintiffs upon Mr. Ruiz's death, and (m) there was a nine-day delay in the transport of Mr. Ruiz's remains.

45. Plaintiffs' medical expert concedes that Mr. Ruiz suffered from "incurable lung cancer." (Doc. 45, exhibit 1.)

46. Plaintiffs have acknowledged that, while Mr. Ruiz was imprisoned in Puerto Rico,

there was no "breach of duty of care." (Doc. 45 at 3.) Plaintiffs, thus, acknowledge that there is no medical evidence that discloses that, as of early April 1997, Mr. Ruiz's medical condition should or could have been diagnosed by prison officials. Further, Plaintiffs' medical expert stated in his affidavit that Mr. Ruiz's symptoms began in early May of 1997. (Doc. 45, exhibit 1.) Mr. Ruiz was diagnosed with cancer between May 23, 1997 and June 3, 1997. (Doc. 45, exhibit 1.) Accordingly,

of the emotional trauma."[47] Florida courts apply this standard, otherwise known as the "impact rule," in recognition of the fact that "a person should not be held liable for every emotional injury that may result from his or her negligence."[48]

▉ The sum of Plaintiffs' allegations of emotional distress are that the Defendant's conduct exacerbated Ms. Gonzalez's pre-existing diabetes condition,[49] caused Mr. Ruiz's children to experience "difficulty in school,"[50] triggered Melanie's "asthma attacks," and caused "pain and suffering" and "other psychological problems."[51] Even a liberal reading of Plaintiffs claims and evidence falls well short of satisfying the impact requirement.

Allegations of difficulty in school and mood swings is clearly insufficient to satisfy the impact rule. As the court in *R.J. and P.J. v. Humana of Florida, Inc.,* observed, "intangible, mental injuries are insufficient to meet the physical injury requirement."[52] Accordingly, Plaintiffs' claims of difficulty in school, and other psychological problems such as mood swings, in the absence of a physical impact or the absence of a physical injury, is insufficient under Florida law and, therefore, summary judgment is warranted as to these claims.

The other minor children, Luis, Jose, and Araika do not even attempt to allege any specific discernible physical manifestations of their emotional distress, whatsoever, but instead simply claim intangible, mental injuries. Thus, to the extent that Plaintiffs Luis, Araika, and Jose assert claims for negligent infliction of emotional distress, those claims fail to satisfy the physical injury requirement of the impact rule. Accordingly, summary judgment is due to be granted on those claims.

The only remaining Plaintiffs, Ms. Gonzalez and Melanie, argue that their pre-existing medical conditions—diabetes and asthma—were aggravated as a result of their emotional distress. While Mr. Ruiz's illness and death were undoubtedly traumatic for these Plaintiffs, these allegations are simply insufficient to establish a physical impact as a result of Defendant's conduct.[53]

In *Brown v. Cadillac,* for example, the court rejected the plaintiff's claim for negligent infliction of emotional distress, holding that the "psychological trauma must cause a demonstrable physical injury such as death, paralysis, muscular impairment, or similarly objectively discernible physical impairment."[54] The Court is unable to

---

Mr. Ruiz's diagnosis was delayed, at best, for approximately one month.

**47.** *Holt v. Rowell,* 798 So.2d 767, 769 (Fla. Dist.Ct.App.2001).

**48.** *Id.* at 771.

**49.** *See* Doc. 45, exhibit 4; see also Doc. 45, exhibit 7 (Ms. Gonzalez stating that her emotional distress caused high blood pressure, which affected her blood sugar level).

**50.** *Id.; see also* Doc. 45, exhibit 9 (Melanie stating that she has experienced difficulties with asthma).

**51.** See Doc. 45 at 5; see also Doc 45, exhibit 7 (Ms. Gonzalez stating that Melanie has experienced mood swings).

**52.** 652 So.2d 360, 364 (Fla.1995) (finding that complaints of hypertension, pain, suffering, mental anguish, and loss of capacity for the enjoyment of life were insufficient to satisfy the physical impact rule).

**53.** *See Brown v. Cadillac Motor Car Division,* 468 So.2d 903 (Fla.1985) (no cause of action for driver who experienced no physical impact or injury from accident where defective automobile lurched forward and killed driver's mother); *Crenshaw v. Sarasota County Public Hospital Board,* 466 So.2d 427 (Fla. Dist.Ct.App.1985) (no cause of action for mother whose stillborn baby was inadvertently placed in hospital's laundry and mutilated due to absence of physical impact upon mother).

**54.** 468 So.2d 903, 904 (Fla.1985).

conclude that the alleged exacerbation of a pre-existing medical condition, such as diabetes or asthma, is sufficient to establish a physical impact directly flowing from the conduct of the Defendant. Accordingly, summary judgment is warranted to the extent that Ms. Gonzalez and Melanie assert claims of negligent infliction of emotional distress against the Defendant.

## IV. *RECOMMENDATION*

In view of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss Or, in The Alternative, For Summary Judgment (Doc. 32) be **GRANTED** and that the Clerk be directed to enter judgment in favor of Defendant and close the file on this matter.

Oct. 10, 2002.