Piero **NAVARRO**, a/k/a Peter Navarro, Plaintiff,

v.

**CITY OF RIVIERA BEACH,** et al., Defendants.

**Case No. 16-cv-80577-BLOOM/Valle**

United States District Court, S.D. Florida.

Signed June 28, 2016

Filed June 29, 2016

Piero Navarro, Riviera Beach, FL, pro se.

Victoria Leonora Olds, Olds & Stephens, P.A., Benjamin Lawrence Bedard, Danna Paige Clement, Roberts Reynolds Bedard & Tuzzio, West Palm Beach, FL, for Defendants.

## ORDER

BETH BLOOM, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** is before the Court upon nine Motions to Dismiss, ECF Nos. [4], [5], [7], [8], [10], [11], [12], [13], [26] (the "Motions"), filed by Defendants City of Riviera Beach (ECF No. [13] ), City of West Palm Beach (ECF No. [7] ), Palm Beach County Sheriff's Office (ECF No. [4] ), Sheriff Ric Bradshaw (ECF No. [4] ), Chief Clarence O. Williams, III (ECF No. [11] ), Detective Russell Paine (ECF No. [12] ), Claudia Hutchinson (ECF No. [10] ), Angela Miller (ECF No. [5] ), and Christina Abbie Navarro (ECF No. [26] ) (together, "Defendants"), with respect to Plaintiff Piero Navarro's ("Plaintiff" or "Mr. Navarro") Verified Complaint, ECF No. [1-2] (the "Complaint"). The City of West Palm Beach has also filed a Motion for Sanctions, ECF No. [34] ("Motion for Sanctions"), pursuant to Fed. R. Civ. P. 11. The Court has carefully reviewed the Motions, all supporting and opposing submissions, the record, and applicable law. For the reasons set forth below, the Motions are granted.

## I. Background

Plaintiff initiated this action on March 16, 2016, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, alleging claims for violation of 42 U.S.C. § 1983, malicious prosecution, false imprisonment, libel, slander, tortious interference with contract, and intentional infliction of emotional distress. The Defendants removed the action to this Court on April 14, 2016. ECF No. [1] (Notice of Removal).

According to the Complaint, this controversy arises from a shipment of "at least seven vehicles" to the Plaintiff's repair establishment, Motorcars of Distinction ("MOD"), by the owner of the vehicles, Gustan Cho. Compl. ¶¶ 17-18. These vehicles began to accrue storage and repair bills, for which the owner refused to pay—leading, according to Mr. Navarro, to the imposition of valid mechanics liens. Id. Mr. Navarro was awarded possession of the vehicles on May 24, 2010. Id. ¶¶ 19-20. Now-retired Detective Russell Paine ("Detective Paine"), on the same date, began targeting the Plaintiff with the help of a former "disgruntled" employee of MOD, Claas Hendrik Honer ("Mr. Honer"), and under the direction of Clarence O. Williams, III, Chief of the City of Riviera Beach Police Department ("Chief Williams" of the "RBPD"). Id. ¶ 21. Plaintiff submits that the RBPD motivated Mr. Honer to give false information through its assistance with a U-5 visa application for the employee, which would allow him to extend his stay in the United States. Id. ¶ 22. The testimony from Mr. Honer, at first, centered on a CLK GTR Mercedes valued at over 1.5 million dollars. Id. ¶ 23. Mr. Honer and Detective Paine, together with other members of the RBPD "went out of their way to falsify evidence concerning the sale of the vehicle and made it look like the vehicle was being sold by [Mr.] Navarro to multiple buyers in some form of Ponzi scheme concocted by [him] with intent to defraud the public." Id. ¶¶ 24, 27-28. Mr. Navarro was eventually absolved of any wrongdoing. Id. ¶ 26. Due to the actions of the RBPD, however, Plaintiff was forced to back out of the CLK GTR deal, which would have resulted in hundreds of thousands of dollars in commission. Id. ¶ 30.

Mr. Navarro submits that the RBPD's witch hunt did not end there. Instead, Detective Paine and Mr. Honer, with the knowledge of the other Defendants, then began "another attempt to discredit and falsely accuse Plaintiff of wrong doing by collaborating with Gustan Cho ..., who disliked the Plaintiff for placing valid liens against his vehicles." *Id.* ¶ 31. This "attempt" involved contacting past and present clients of Mr. Navarro, including NFL Miami Dolphins player, Calvin "CJ" Mosley—in both written and verbal communications—to inquire as to whether any of them could corroborate that Mr. Navarro was "engaged in a scheme to sell stolen vehicles along with a litany of other false charges against the Plaintiff ranging from child pornography, to domestic violence, to ties with organized crime." *Id.* ¶¶ 32, 38, 103-105. Toward this end, Detective Paine "doctored evidence," which damaged Plaintiff's reputation and caused him to lose several present and future clients. *Id.* ¶¶ 33-38. The actions of Detective Paine and the RBPD also resulted in Plaintiff "losing his family," as he was unable to reconcile with his ex-wife, Christina Abbie Navarro ("Ms. Navarro"), and otherwise caused severe mental anguish and distress for the Plaintiff and his children. *Id.* ¶¶ 36, 37, 129. At all times relevant to this action, Plaintiff maintains that the RBPD knew or should have known that the information "that was being supplied from [Mr. Honer] was not reliable and was proffered solely to assist [him] to stay in the country." *Id.* ¶ 39.

Detective Paine eventually sent the case to William Minton in the Palm Beach County District Attorney's Office for permission to initiate prosecution; however, Mr. Minton refused to sign off on initiation of the case. *Id.* ¶¶ 40-41. After this refusal, Detective Paine handed the case over to then Assistant State Attorney Angela Miller ("ASA Miller") for probable cause review. *Id.* ¶ 42. The RBPD did in fact obtain a warrant to search MOD, on or about November 23, 2010—one that, as alleged, was based on lies, false evidence, and testimony of coerced witnesses. *Id.* ¶¶ 48-50. The Complaint claims that, upon arrival at MOD, despite being offered keys to the business, RBPD officers smashed the glass doors to both entryways of the business, *id.* ¶ 52—an action that Plaintiff maintains was taken in a clear attempt to intimidate him and to "further disrupt and defame his car sales business," *id.* ¶ 53. In the search, the police collected computers and file cabinets from the property as well as personal property belonging to one of the Plaintiff's clients, a famous athlete—property that, to this date, has not been returned. *Id.* ¶¶ 54-55.[1] On or about June 3, 2011, officers from both the Palm Beach County Sheriff's Office ("PBSO") and RBPD, under the direction of Sheriff Ric Bradshaw ("Sheriff Bradshaw") and with the assistance of John and Jane Doe and Entity Does (1-20), "ransacked [Mr.] Navarro's home, entering with assault guns, and removed and damaged several items in the home. ... This search was conducted without permission of the Plaintiff and without proper warrant." *Id.* ¶¶ 56-59 ("The raid caused such a spectacle ....."). The Complaint further indicates that, at some point, the Plaintiff was temporarily imprisoned, and he had to

---

1. According to the Complaint, eventually, the trial court ordered the return of all of Mr. Navarro's property. *Id.* ¶ 68. To this day, however, property is still missing and/or damaged. *Id.* ¶¶ 69-71. Although immaterial to any of Mr. Navarro's claims for relief, he attempts to imply misconduct on the part of the evidence custodian for the RBPD, Claudia Hutchinson—the same person performing the duties of evidence custodian at the time that Mr. Navarro's property was taken into police custody—in relaying that she is currently being prosecuted for the theft of over $100,000.00 in stolen evidence and cash. *Id.* ¶¶ 72, 73.

tender $2,000.00 for his release. *Id.* ¶ 95. Although the case against Mr. Navarro was dismissed and all charges were dropped on August 22, 2011, *id.* ¶ 60, RBPD "continued its attempts to defame and maliciously prosecute the Plaintiff," *id.* ¶ 61. These attempts, Plaintiff claims, motivated the judge presiding over the Navarros' divorce proceedings to allow their children to relocate to Georgia. *Id.* ¶¶ 130-31. Furthermore, in November of 2013, Detective Paine assisted Ms. Navarro in attempting to obtain an order of protection against the Plaintiff in the same proceedings. *Id.* ¶ 66.

Pursuant to these facts, Mr. Navarro brings seven claims for relief, including: (Count I) violation of 42 U.S.C. § 1983 against the City of Riviera Beach (or, "the City"), the City of West Palm Beach, PBSD, Sheriff Bradshaw, Chief Williams, Detective Paine, Entity Does (1-20), and Jane and John Does (1-150); (Count II) malicious prosecution against the City of Riviera Beach, Detective Paine, Chief Williams, Mr. Honer, Ms. Navarro, and Jane and John Doe; (Count III) false imprisonment against the City of Riviera Beach, Detective Paine, Mr. Honer, and ASA Miller; (Count IV) libel against the City of Riviera Beach, Detective Paine, and Mr. Honer; (Count V) slander against the City of Riviera Beach, Detective Paine, and Mr. Honer; (Count VI) tortious interference with contract against the City; and (Count VII) intentional infliction of emotional distress against the City of Riviera Beach, the City of West Palm Beach, Detective Paine, Mr. Honer, Entity Does (1-20), and Jane and John Doe.

## II. Legal Standard

■ A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

■ When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir.2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir.2002). Although the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss ... the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted). Through this lens, the Court addresses the instant Motions.

## III. Discussion

All but one of the named Defendants in this action filed Motions to Dismiss, wheth-

er individually or jointly.[2] Plaintiff responds to every Motion together in one 11-page document, ECF No. [25] ("Response"), which contains three main arguments. First, Mr. Navarro submits that he has sufficiently pled his claims pursuant to Rule 8—particularly where, as he unabashedly asserts, "civil rights laws favor plaintiffs over defendants." Resp. at 3, 6. Second, the Response asserts, without explanation, that dismissal on the basis of any applicable statute of limitations is premature at this stage. And, finally, he addresses the City of West Palm Beach, arguing that the allegations in the Complaint sufficiently plead a cause of action against it—and, calling its request for sanctions a "rush to condemn." *Id.* at 9. Despite being provided with additional time, ECF No. [23], Mr. Navarro provides no further counter-points to the many robust arguments made against him, addressed below.

 The Court will, nevertheless, liberally construe all pleadings submitted by Mr. Navarro, as the law dictates is appropriate for *pro se* litigants. *See Jarzynka v. St. Thomas Univ. of Law*, 310 F.Supp.2d 1256, 1264 (S.D.Fla.2004) ("A pro se litigant's pleadings must be construed more liberally than those pleadings drafted by attorneys."); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir.2007) ("We are to give liberal construction to the pleadings of pro se litigants."). However, "this leniency does not give a court license to serve as de facto counsel for a party ... or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998) (citations omitted). "[D]espite liberal pleading standards for pro se litigants, the Court cannot be forced to speculate on what someone is complaining about." *Grady v. Georgia Dep't of Correction*, 2010 WL 322881, at *2 (S.D.Ga. Jan. 27, 2010). The Court cannot simply "fill in the blanks" to infer a claim, *Brinson v. Colon*, 2012 WL 1028878, at *1 (S.D.Ga. Mar. 26, 2012), as "it is not the Court's duty to search through a plaintiff's filings to find or construct a pleading that satisfies Rule 8," *Sanders v. U.S.*, 2009 WL 1241636, at *3 (N.D.Ga. Jan. 22, 2009); *see Bivens v. Roberts*, 2009 WL 411527, at *3 (S.D.Ga. Feb. 18, 2009) ("[J]udges must not raise issues and arguments on plaintiffs' behalf, but may only construe pleadings liberally given the linguistic imprecision that untrained legal minds sometimes employ.") (citing *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir.2008)).

## A. PBSO and Sheriff Bradshaw, ECF No. [4]

 As noted, Count I asserts a violation of 42 U.S.C. § 1983 against both PBSO and Sheriff Bradshaw, who is sued individually and in his official capacity as Sheriff of Palm Beach County. Compl. ¶ 76. As a threshold matter, PBSO must be terminated from the above-styled action, because it is not a legal entity with the capacity to be sued. "[T]he Florida Constitution creates within each county a sheriff and describes the sheriff, quite properly, as a 'constitutional officer' of Florida." *Ramirez v. Hillsborough Cnty. Sheriff's Office*, —— F.Supp.2d ——, ——, 2011 WL 976380, at *1 (M.D.Fla. Mar. 18, 2011). Section 768.28(9)(a), Florida Statutes, provides that the "exclusive remedy" for an injury or damage allegedly caused by "an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers" is

---

**2.** The only named Defendant who did not file an answer of any kind to the Complaint is Mr. Honer, who Mr. Navarro alleges was ordered to be deported from the United States in 2014. Compl. § 82. It appears that a summons as to Mr. Honer was issued on March 16, 2016, ECF No. [1-3] at 143-44, but there is no record that service was perfected.

an action against "the constitutional officer of which the officer, employee, or agent is an employee." Thus, the Sheriff in his official capacity, and not the county "Sheriff's Office," is the proper party to an action against the Sheriff or any employee of the Sheriff's Office. *See Ramirez,* —— F.Supp.2d at ——, 2011 WL 976380, at *1; *see also Ramsay v. Broward Cnty. Sheriff's Office,* 303 Fed.Appx. 761, 763 n. 1 (11th Cir.2008) ("The proper defendant is Al Lamberti, in his official capacity as Sheriff of the Broward County Sheriff's Office."); *Levine v. Sarasota Cnty. Sheriff's Office,* —— F.Supp.2d ——, ——, 2006 WL 2037151, at *2 (M.D.Fla. July 18, 2006) ("Florida law provides that the proper party to be sued for the alleged wrongful acts of sheriff's deputies is the sheriff, the constitutional officer.") (citing § 768.28(9), Fla. Stat.). Plaintiff's claim against PBSO must, therefore, be dismissed. *See Keck v. Seminole Cnty. Sheriff's Office,* —— F.Supp.2d ——, ——, 2010 WL 2822011, at *2 (M.D.Fla. July 16, 2011) (granting motion to dismiss plaintiff's complaint after concluding that, "[a]s a threshold matter, Plaintiff's claims against the 'Seminole County Sheriff's Office' are improper inasmuch as the Sheriff's Office is not *sui juris* and cannot be sued").

However, Count I cannot survive as asserted against Sheriff Bradshaw in his official capacity either, because it fails to state a claim upon which relief can be granted. The only relevant allegations consist of two paragraphs of the Complaint, where Mr. Navarro alleges that:

On or about June 3, 2011, police officers of both the PALM BEACH COUNTY SHERIFF DEPARTMENT and the CITY OF RIVIERA BEACH through its Police Department, under the direction of SHERIFF RIC BRADSHAW and with the assistance of JOHN and JANE DOE under the supervision ENTITY DOES (1-20) converged on Navar-

ro's with force, ransacked Navarro's home, entering with assault guns, and removed and damages several items in the home. Navarro does not have a complete list of all items which were taken during the search. This search was conducted without permission of the Plaintiff and without proper warrant.

*Id.* ¶¶ 56-57. In contrast to these extremely limited facts as to the involvement of PBSO and Sheriff Bradshaw, Count I makes sweeping allegations against them, as follows:

Acting under color of law and pursuant to official policy or custom, the Actors did knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis their subordinates and instruct in their duties to refrain from:

Unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

Unlawfully and maliciously arresting, imprisoning, and prosecuting a citizen, who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

Conspiring to violate the rights, privileges, and immunities guaranteed by Plaintiff by the Constitution and laws of the USA and the laws of the State of Florida; and

Otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

*Id.* ¶ 78. Nowhere in Mr. Navarro's Complaint, however, are there any allegations that the PBSO or Sheriff Bradshaw had an official policy or custom that resulted in a constitutional violation, that they in any way harassed the Plaintiff amounting to a constitutional violation, that they had any participation in arresting, imprisoning, or prosecuting the Plaintiff in violation of his

constitutional rights, or that they conspired in any way to violate the Plaintiff's constitutional rights. Indeed, no argument is made as to how the only alleged involvement of PBSO and Sheriff Bradshaw—an inter-agency search of Mr. Navarro's residence—amounts to a section 1983 claim. These hollow allegations as to liability of Sheriff Bradshaw in his official capacity are, thus, clearly insufficient. *See, e.g., Shillingford v. Rolly Marine Serv., Inc.,* No. 14–CIV–61936, 2014 WL 6682477, at *3 (S.D.Fla. Nov. 25, 2014) (discussing shotgun pleadings).

 Sheriff Bradshaw is also protected from suit in an individual capacity in the section 1983 context under a theory of qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami,* 382 F.3d 1220, 1231 (11th Cir.2004) (quoting *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir.2002); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "This formulation of the qualified immunity inquiry is intended to protect government officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *Jordan v. Doe,* 38 F.3d 1559, 1565 (11th Cir.1994) (quoting *Harlow,* 457 U.S. at 806, 102 S.Ct. 2727); *see also Jackson v. Humphrey,* 776 F.3d 1232, 1241–42 (11th Cir.2015) ("The purpose for qualified immunity is to permit officials to act without fear of harassing litigation as long as they can reasonably anticipate before they act whether their conduct will expose them to liability."). The doctrine " 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland,* 382 F.3d at 1231-32 (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct.

1092, 89 L.Ed.2d 271 (1986)). "Qualified immunity is an immunity from suit rather than a mere defense from liability." *McClish v. Nugent,* 483 F.3d 1231, 1237 (11th Cir.2007). "To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Kingsland,* 382 F.3d at 1232 (quoting *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002)); *see O'Rourke v. Hayes,* 378 F.3d 1201, 1205 (11th Cir.2004) ("To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting within the scope of his discretionary authority.") (citation omitted).

Here, it is undisputed that Sheriff Bradshaw was acting in his discretionary capacity. *See* Compl. ¶ 6 ("Defendant RIC BRADSHAW, upon information and belief, was, at all times material herein, a citizen of the USA and a resident of the State of Florida, duly appointed and acting in his individual capacity as Sheriff of the Palm Beach County Sheriff's Office."). Once a defendant raises the issue of qualified immunity and demonstrates that the acts complained of were committed within the scope of his discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because: (1) the officers violated a constitutional right; and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw,* 573 F.3d 1158, 1166 (11th Cir.2009). Besides a conclusory statement that his "constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the USA and protected by 42 U.S.C. sec. 1983" were violated, Compl. ¶ 80, Mr. Navarro does not even attempt to meet the burden required to overcome the application of qualified immunity. Furthermore, Plaintiff cannot state a claim for violation of his Fifth Amendment rights, as

it is well-settled that the Fifth Amendment, which protects individuals from being "deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, applies only to federal, and not state, actors. *Jordan v. Mosley*, 298 Fed. Appx. 803, 806 n. 5 (11th Cir.2008); *Townsend v. Coffee Cty., Ga.*, 854 F.Supp.2d 1345, 1353 (S.D.Ga.2011) (dismissing section 1983 claim against deputy county sheriff in his individual capacity for violation of Plaintiff's Fifth Amendment rights as sheriff was not federal actor).

 Moreover, as to the general allegations seeking to hold Sheriff Bradshaw liable for the acts of his subordinates, "[i]t is well established in this circuit that supervisory officials are not liable under *Bivens* for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)) (alterations adopted). Instead, supervisory liability under § 1983 occurs either when a supervisor personally participates in the alleged unconstitutional conduct or when there is a "causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003).[3] Clearly, no such facts are alleged here demonstrating the violation of a clearly established constitutional right

Mr. Navarro fails in his multiple attempts to hold an individual or entity from the PBSO liable for the inter-agency search alleged. Defendants' Motion, accordingly, is granted in its entirety. Even to the extent that facts exist capable of demonstrating a violation of a clearly established constitutional right and, thus, overcoming qualified immunity as to Sheriff Bradshaw in his individual capacity, amendment would be futile. Although Defendants' Motion failed to make the appropriate argument, it is clear that any conduct related to the inter-agency search is barred by the applicable statute of limitations, Fla. Stat. 768.28(6)(a), as addressed in more detail below.

## B. Angela Miller (ECF No. [5])

Count III asserts a claim for false imprisonment against ASA Miller, in addition to other Defendants. Specifically, the Complaint alleges that ASA Miller was "at all times material [to the lawsuit] ... duly appointed and acting in [her] individual capacity as Assistant State Attorney for the Palm Beach County Attorney's Office." Compl. ¶ 8. At some point, Detective Bradshaw presented a case to ASA Miller for probable cause review. *Id.* ¶ 42. ASA Miller "knew or should have known" that the information contained in the Detective Bradshaw's case was "not reliable." *Id.* ¶ 44. Other defendants, including Detective Bradshaw "participated in falsifying and mischaracterizing evidence against Plaintiff ... leading to the temporary confinement and imprisonment" of Mr. Navarro, which was against his will. *Id.* ¶¶ 95, 98–99.

---

**3.** Accordingly, "to state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." *Barr v. Gee*, 437 Fed.Appx. 865, 875–76 (11th Cir.2011). A supervisor cannot be held liable under § 1983 for mere negligence in the training or supervision of his employees. *Greason v. Kemp*, 891 F.2d 829, 836–37 (11th Cir.1990).

ASA Miller "corroborated with knowledge" the fact that Mr. Honer was providing "false information." *Id.* ¶ 96. Although the Complaint does not state that charges were filed against Plaintiff, it does allege that charges were ultimately nolle prossed on August 22, 2011. *Id.* ¶ 60. Also conspicuously absent from the Complaint and the Response are any allegations as to the date, duration, or manner of Mr. Navarro's alleged "confinement and imprisonment." *Id.* ¶ 95. Pursuant to these perfunctory claims, ASA Miller argues that three grounds necessitate dismissal of Count III, including that it is barred by the relevant statute of limitations, it is insufficiently pled, particularly with regard to the claim for false imprisonment, and she may not be held personally liable for actions taken in the scope of her employment. She is correct on all three grounds.

First, Mr. Navarro's claim for false imprisonment against ASA Miller—and otherwise—is barred by the relevant statute of limitations. *See* Fla. Stat. § 95.11(3)(*o*). Although Plaintiff's Complaint omits the date of his arrest, the Court takes judicial notice of the public docket in Plaintiff's criminal case, as requested by ASA Miller, to ascertain this critical date. *See* ECF No. [5-1] ("Criminal Docket"). Although a court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, a court may consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir.2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint. A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims.") (quotation omitted); *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1353 (11th Cir.2006) ("When considering a

motion to dismiss ... the court limits its consideration to the pleadings and exhibits attached thereto."); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir.2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir.2002)). Furthermore, courts may take judicial notice of public records, such as a pleading filed in another court, because such documents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir.1999) (quoting Fed. R. Evid. 201(b)(2)). However, judicial notice may be taken only to establish what those documents contain, not the veracity of their contents. *See id.*; *Universal Express, Inc. v. U.S. SEC*, 177 Fed.Appx. 52, 53 (11th Cir.2006) (holding that judicial notice of public records, such as court filings, is proper); *Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 Fed.Appx. 812, 816 n. 5 (11th Cir.2014) (same); *Martin v. Hogue*, No. 8:11–CV–228–T–33MAP, 2011 WL 2894986, at *2 (M.D.Fla. July 20, 2011) (taking judicial notice of the Clerk of Court for the Thirteenth Judicial Circuit's progress docket which showed that a jury found plaintiff guilty of robbery).

The length of the statute of limitations in a § 1983 action is determined by the law of the state where the cause of action arose. *See Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts."). In Florida, the statute of limita-

tions for false arrest/false imprisonment [4] claims is four years. *See Harris v. Goderick*, 608 Fed.Appx. 760, 763–64 (11th Cir. 2015) (citing Fla. Stat. § 95.11(3)(*o*)). The accrual date of the statute of limitations in a section 1983 action is determined by federal law. *See Wallace v. Kato*, 549 U.S. 384 at 389, 127 S.Ct. 1091. An action for false imprisonment "ends once the victim becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* (emphasis removed); *see Leatherwood v. City of Key W.*, 347 So.2d 441, 442 (Fla. 3d DCA 1977) (finding that cause of action for false imprisonment accrues on the date of arrest, not on the date of ultimate dismissal of the charges).

Mr. Navarro filed the instant action on August 24, 2015. *See* Compl. The only other relevant date alleged is August 22, 2011, when "all charges were dropped" and that the case against him "was nolle prossed." *Id.* at ¶ 60. Accordingly, the arrest and arraignment of Plaintiff necessarily occurred before August 22, 2011. Indeed, documents that are public record from the docket of the Fifteenth Judicial Circuit in the criminal case against Plaintiff, bearing Circuit Court case number 50-2011-CF-005895, demonstrate that Plaintiff was arrested on June 3, 2011, bond was posted on the same date, and Plaintiff waived an arraignment one week late, on June 10, 2011. *See* Criminal Docket. Thus, Plaintiff needed to file the Complaint by June 3, 2015—more than two months before the Complaint was in fact filed—in order to be timely. *See Leatherwood*, 347 So.2d at 442

("The cause of action for false arrest and imprisonment accrued on the day of plaintiff's arrest.").

Curiously, Mr. Navarro does not directly contest this analysis in his Response, instead, simply asserting that any such procedural considerations are premature. The law, however, is clear. As the Plaintiff's arrest occurred more than four years prior to the filing date of this action, to wit, August 24, 2015, any section 1983 claim alleged by Plaintiff for false imprisonment is barred by the applicable statute of limitations. *See Harris*, 608 Fed.Appx. at 764 (11th Cir.2015) (affirming dismissal of § 1983 false arrest claim occurring in Florida as time-barred where arrest occurred more than four years before complaint was filed). Similarly, while Plaintiff has not expressly alleged such claims, any Fourth Amendment claims premised upon the search of Plaintiff's business on November 23, 2010, and the search of Plaintiff's home on June 3, 2010, and any allegedly unlawful seizure of his property connected with same, would also be barred by Florida's four year statute of limitations. Compl. ¶¶ 49, 56; *see* Fla. Stat. § 95.11(3). Because Plaintiff cannot cure this defect, Count III for false imprisonment is dismissed with prejudice as to ASA Miller—as well as all other Defendants against whom the claim is asserted, including the City of Riviera Beach, Detective Paine, and Mr. Honer.

■ Even if Mr. Navarro's claim for false imprisonment was not barred by the applicable statute of limitations, this cause of action is insufficiently pled in the Complaint.[5] "To be liable for false imprison-

---

4. The Eleventh Circuit has recognized that section 1983 false imprisonment claims which arise from a detention on the basis of a false arrest are "functionally indistinct." *Eloy v. Guillot*, 289 Fed.Appx. 339, 342 (11th Cir. 2008).

5. It is well-settled that a warrantless arrest without probable cause violates the Fourth Amendment and gives rise to a section 1983

claim for false arrest. *See Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir.1990). In *Heck v. Humphrey*, the Supreme Court distinguished the claim of false arrest from malicious prosecution, stating that, "unlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pur-

ment, a person must personally and actively participate, directly or indirectly by procurement, in the unlawful restraint of another person against their will." *Harris v. Kearney*, 786 So.2d 1222, 1225 (Fla. 4th DCA 2001). The Complaint does not allege that ASA Miller had any involvement in Plaintiff's detention, nor does it allege that she had any role in procuring it. All that the Complaint does allege is that ASA Miller was presented with a case by law enforcement officers for review. It is unclear from the face of the Complaint how that is objectionable, especially considering that the Complaint does not allege that ASA Miller took any actions upon being presented with the case. It does not allege, for example, that, after reviewing the case, ASA Miller directed law enforcement to take any action. It does not allege that, after reviewing the case, ASA Miller advised law enforcement that they had probable cause to make an arrest. It does not alleged that, after reviewing the case, ASA Miller assisted law enforcement in obtaining a warrant for Plaintiff's arrest, or for a search of his home. It does not allege that, after reviewing the case, ASA Miller filed charges against Plaintiff. In fact, the Complaint does not even allege that ASA Miller undertook review of the case. Indeed, the only act that Plaintiff expressly alleges that ASA Miller undertook was to "corroborate" with law enforcement. *See* Compl. ¶ 96 ("[Miller] corroborated with knowledge the information [that a witness] was providing was based on false information."). This allegation is not only ambiguous, but also conclusory and unsupported by any factual allegations. It does not identify what evidence ASA Miller corroborated, nor does it state when or how ASA Miller corroborated the evidence. As such, dismissal is warranted for failure to state a claim:

suant to legal process." 512 U.S. 477, 484,

The Complaint, nonetheless, does make one thing abundantly clear: ASA Miller was "at all times material [to the lawsuit] ... duly appointed and acting in [her] individual capacity as Assistant State Attorney for the Palm Beach County Attorney's Office." Compl. ¶ 8. Importantly, "[p]rosecutors are absolutely immune from liability for damages for activities that are 'intimately associated with the judicial phase of the criminal process,' such as the initiation of prosecution and the presentation of the government's case." *Davis v. Markley*, 601 Fed.Appx. 799, 801 (11th Cir.2015) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). As previously noted, "[s]ection 768.28(9)(a) [Fla. Stat.] clothes governmental employees with individual immunity that is lost only as to torts committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights and safety." *Castellano v. Raynor*, 725 So.2d 1197, 1198 (Fla. 2d DCA 1999); *see Parker v. Fla. Bd. of Regents*, 724 So.2d 163, 167 (Fla. 1st DCA 1998) ("Although the statute does not define 'bad faith,' under section 768.28(9)(a), '[b]ad faith has been equated with the actual malice standard.' "). The instant Complaint is devoid of any factual allegations demonstrating that ASA Miller acted with actual malice or in bad faith sufficient to pierce the immunity afforded to her under Florida statutory law. As such, ASA Miller is statutorily immune from this suit, even if the claim against her was not procedurally barred and insufficiently pled. For all of these reasons, ASA Miller's Motion to Dismiss is granted, and Count III—as to all named Defendants—is dismissed with prejudice as amendment would be futile due to the expired statute of limitations. *See Christman v. Walsh*, 416 Fed.Appx. 841, 844 (11th Cir.2011) ("A dis-

114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

trict court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."); *Aguilar v. United Floor Crew, Inc.*, No. 14–cv–61605, 2014 WL 6751663, at *2 (S.D.Fla. Dec. 1, 2014) (same).

### C. City of West Palm Beach, ECF Nos. [7], [34]

Mr. Navarro brings claims against the City of West Palm Beach (or, "WPB") for violation of 42 U.S.C. § 1983, Count I, and intentional infliction of emotional distress, Count VII. However, these claims are also barred by the applicable statute of limitations, as they appear to rely on the same facts discussed herein regarding the inter-agency search of Plaintiff's home on June 3, 2010. *See* Compl. ¶¶ 49, 56; Fla. Stat. 768.28(6)(a) (providing that tort claims must be presented in writing to the appropriate agency within three years after such claim accrues).[6] Even if they were not barred, the claims would fail as lacking—in fact, WPB's Motion argues that not only dismissal but also sanctions are warranted because of the anemic nature of Plaintiff's allegations. Mr. Navarro maintains that he has sufficiently stated his claims. Specifically, he points to paragraph 125 of the Complaint, which avers that "THE CITY OF RIVIERA BEACH through its Police Department with the assistance of THE CITY OF WEST PALM BEACH and THE PALM BEACH COUNTY SHERIFF DEPARTMENT conducted a search of the Plaintiff's home without a warrant with the jurisdictional cooperation of the West Palm Beach Police Department." But, this is a legal conclusion masked as a factual allegation. *See, e.g., Pouyeh v.*

*Baqscom Palmer Eye Inst.*, 613 Fed.Appx. 802, 808 (11th Cir.2015) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). This paragraph appears to rely on paragraph 56 of the Complaint, which alleges that "[o]n or about June 3, 2011, police officers of both the PALM BEACH COUNTY SHERIFF DEPARTMENT and the CITY OF RIVERIA [sic] BEACH through its Police Department, under the direction of SHERIFF RIC BRADSHAW and with the assistance of JOHN and JANE DOE under the supervision of ENTITY DOES (1-20) converged on [Mr.] Navarro's with force, ransacked [Mr.] Navarro's house, entering with assault guns, and removed and damaged several items in the home." Notably, however, WPB is not mentioned in this paragraph. *See* ECF No. [32] (WPB reply to motion). In fact, the only mention of WPB in the factual allegations of the Complaint is that it is a municipality of the State of Florida, duly organized and existing under the laws of the State of Florida, which can be sued under Fla. Stat. § 768.28. Compl. ¶¶ 4, 51. Although WPB is a municipality, this fact alone obviously does not amount to a violation of 42 U.S.C. § 1983 or intentional infliction of emotional distress. No other allegations in the Complaint support finding liability for WPB. Taking Plaintiff's allegations against WPB as true, he has merely proven that WPB does indeed exist.

Plaintiff's apparent confusion is further illustrated by the fact that WPB received two summonses in this case: one for "City of West Palm Beach" and one for "West

---

6. Furthermore, the Defendant contends that Plaintiff failed to provide it with the requisite notice for his tort claim of intentional infliction of emotional distress under Fla. Stat. 768.28(6)(a). *See Aitcheson v. Fla. Dep't of*

*Highway Safety & Motor Vehicles,* 117 So.3d 854 (4th DCA 2013). Although this argument has merit, the Court refrains from addressing it as dismissal of Plaintiff's claim is warranted on other grounds.

Palm Beach." ECF No. [1-3] at 74, 124 (summonses). The Assistant Attorney for WPB submits that he has reached out to Plaintiff's counsel on more than one occasion to inquire as to which entity he intends to sue, given that the Complaint seems to interchange the City of West Palm Beach with Palm Beach County Sheriff's Office in certain paragraphs. *See* ECF Nos. [19-1] ("May 2, 2016, email") ("We spoke on this issue almost a month ago and you advised me that you would consult with your client to confirm he had identified the correct law enforcement agencies to be included in this action. To date, I have not received a response."); [19-2]. However, he has yet to receive a response. Because, at this point, it is not even clear which entity Mr. Navarro wishes to sue, his claims against WPB could not withstand the Defendant's Motion, even if his claims were not time-barred.

 Accordingly, WPB seeks sanctions, in addition to dismissal, because Plaintiff's counsel has put the burden on the Defendant—asking it to spend additional time and public resources while he addresses issues that should have been addressed prior to filing suit. *See* May 2, 2016, email. Indeed, the Federal Rules of Civil Procedure do not provide for this allocation of burdens; rather, Plaintiff's counsel has an affirmative duty to conduct pre-suit investigation prior to filing the Complaint. *See Mike Ousley productions, Inc. v. WJBF–TV*, 952 F.2d 380, 382 (11th Cir.1992) ("Rule 11 'stresses the need for some prefiling inquiry.") (citing *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987) (en banc)). Fed. R. Civ. Pro. 11(b)(2)–(3), therefore, permits sanctions where a claim is not supported by the application of then-existing law to the material facts. *See id.* (affirming district court's decision to impose sanctions against attorney for failing to conduct reasonable inquiry into facts concerning de-

fendant who had continuously maintained that he was not involved in underlying controversy).

 Although Plaintiff labels the Motion for Sanctions a "rush to condemn," the Defendant is merely holding Plaintiff and his counsel to the bare minimum standards of the Federal Rules, which apply to every litigant equally. Alternatively, if Plaintiff inadvertently left WPB out of the factual allegations, then Mr. Navarro had the opportunity to amend his Complaint, pursuant to Fed. R. Civ. P. 15(a)(1), once WPB brought the issue to his attention. *See* May 2, 2016, email. Instead, Plaintiff puts the burden on WPB to seek dismissal and then asks this Court for additional time to allege the most basic allegations that should be included in the Complaint, i.e. who is being sued and for what. For these reasons, the Court finds that the City of West Palm Beach is entitled to its reasonable attorneys' fees and costs to date. The Plaintiff has cost the public Defendant time and expense in defending a Complaint that has no merit on its face. WPB will be required, therefore, to submit an affidavit detailing these reasonable fees to date for the Court's consideration. After the proper fee award is determined, the Court will dismiss the City of West Palm Beach from this action with prejudice as any claims stemming from the allegedly improper search are barred by the applicable Florida statute of limitations.

### D. Claudia Hutchinson, ECF No. [10]

 In Plaintiff's seven-count, twenty-six page Complaint, Plaintiff likewise makes only two allegations as to Ms. Hutchinson. Specifically, in paragraph 72 of the Complaint, Plaintiff alleges that, "as of the date of this filing, the City of Riviera Beach Police Department's evidence custodian, Claudia Hutchinson is being prosecuted for the theft of over one hun-

dred thousand dollars ($100,000) in alleged stolen evidence and cash." Further, in paragraph 73 of the Complaint, Plaintiff alleges, "[t]his same individual was performing the duties'[sic] of evidence custodian at the time [Plaintiff's] property was taken into police custody and is believed to have retained possession of Plaintiff,[sic] and Mosely's property." However, Plaintiff does not seek relief in any of these claims against Ms. Hutchinson, nor do any of these claims mention or otherwise name Ms. Hutchinson as an actor involved in any of the alleged conduct giving rise to relief. See generally Compl. None of these allegations even relate to any of the seven underlying counts. Instead, the sole allegation raised against Ms. Hutchinson, namely, retention of property obtained during the police investigation of Plaintiff, is unconnected to the harm allegedly suffered by Plaintiff as a result of his claims for malicious prosecution, false imprisonment, libel, slander, tortious interference with contract, intentional infliction of emotional distress, and violation of his Fifth and Fourteenth Amendment rights (brought pursuant to section 1983). As plead, the allegations of the Complaint do not give Ms. Hutchinson "fair notice" as to the nature of Plaintiff's claims, if any, and the grounds upon which such claims rest. See, e.g., Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Because, ultimately, the Complaint does not assert any cause of action—whether sufficiently or insufficiently pled—Ms. Hutchinson is terminated from this action.

### E. Christina Navarro, ECF No. [26]

In contrast, Count II for malicious prosecution is asserted against Ms. Navarro, as well as the City of Riviera Beach, Detective Paine, Chief Williams, Mr. Honer, and Jane and John Doe. Pursuant to that count, the Complaint alleges that on November 23, 2010, the RBPD obtained a warrant to search MOD. Id. ¶¶ 49, 50. At that time, Plaintiff was under an order from family court awarding possession of MOD and his home, as of August 4, 2010, to Ms. Navarro. Id. ¶ 51. Mr. Navarro then alleges that there were several communications between Mr. Honer, Detective Paine, and Ms. Navarro in which the three Defendants conspired to arrest him. The Complaint also notes that Detective Paine attempted to assist Ms. Navarro in obtaining an order of protection against Plaintiff, based on false information. Id. ¶ 66. It is unclear precisely how these various allegations coalesce to form a cognizable claim.

Regardless of the muddy legal premise, Ms. Navarro, appearing pro se, argues that, because a Final Judgment of Dissolution of Marriage was entered on August 12, 2011, between Christina A. Navarro and Piero Navarro a/k/a Piero Navarro, the doctrine of res judicata applies to any post-dissolution matters that could or should have been brought during the divorce. This Final Judgment of Dissolution of Marriage, therefore, would strip the Court of subject matter jurisdiction as to such matters. However, Defendant does not present the Court with any public records, affidavit, or other evidence demonstrating the scope or contours of the divorce ruling. The Court, instead, only has Ms. Navarro's word—particularly, as Plaintiff did not respond to her argument, filed after the Response referenced herein. Regardless, the allegations against Ms. Navarro certainly do not plausibly allege a claim for malicious prosecution—or even come close, for that matter. See Durkin v. Davis, 814 So.2d 1246, 1248 (Fla. 2d DCA 2002) (citing Burns v. GCC Beverages, Inc., 502 So.2d 1217 (Fla.1986) ("In order to prevail in a malicious prosecution action, the plaintiff must establish each of six elements: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present de-

fendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding."). Such vague and seemingly unconnected allegations cannot sustain a claim. Accordingly, Count II as to Ms. Navarro is dismissed. To the extent that additional facts exist that constitute a legally sufficient claim against Ms. Navarro—one that is not barred by the doctrine of res judicata—the Court will provide Mr. Navarro with an opportunity to demonstrate the same by amendment.

Ms. Navarro also requests attorney's fees and cost based on frivolous litigation. Oddly, though, she is not represented by counsel, and her Motion to Dismiss, signed by her alone, consists of a mere four sentences. The Court, therefore, will not order Plaintiff to reimburse Ms. Navarro for what appears to have required very little time or expense and was not borne by an attorney.

### F. Clarence O. Williams, ECF No. [11]

■ Chief Williams requests dismissal of Counts I and II of Plaintiff's Complaint for pleading insufficiency. The section 1983 claim in Count I is alleged against Chief Williams both in his official capacity as Chief of the RBPD and individually, while the Count II malicious prosecution claim is brought solely against Chief Williams individually. These claims fail for the same reason that Mr. Navarro's claims against Sheriff Bradshaw and ASA Miller fail, namely, qualified immunity.

■ When an officer is sued under section 1983 in his or her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991). Thus, "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official capacity actions against local government officials, because local government units can be sued directly." *Id.* Plaintiff's section 1983 claim against Chief Williams in his official capacity, therefore, is also subject to dismissal as it is redundant of the same claim asserted against the City. *See Busby*, 931 F.2d at 776 (affirming district court's dismissal of the Plaintiff's claims against the Defendants in their official capacity because to keep both the City and the officers would have been redundant and possibly confusing to the jury).

■ As to liability of Chief Williams in an individual capacity, even if Mr. Navarro could prove that application of qualified immunity is improper, his claims fail to meet the standards of Rule 8. The Complaint sets forth only three conclusory allegations that name Chief Williams: (1) that the "targeting" of Plaintiff by Detective Paine was done "under the direction" of Chief Williams; (2) that Chief Williams "knew or should have known that information being provided by [Mr.] Honer was not reliable and being proffered solely to assist [Mr.] Honer to stay in the USA"; (3) and that Chief Williams directed Detective Paine "to go after Plaintiff to make some cause of action stick against him." Compl. ¶¶ 21, 39, 62. These allegations are devoid of any facts describing, for example: the extent, if any, of Chief Williams' personal involvement in the investigation; the nature of any supervisory relationship be-

tween Chief Williams and Detective Paine; what directions Chief Williams provided to Detective Paine regarding the investigation and the alleged falsification of evidence; the knowledge, if any, that Chief Williams had of the facts and circumstances of the investigation; and Chief Williams' role, if any, in the subsequent arrest and prosecution of the Plaintiff. *See generally* Compl.

■ Moreover, as to Count II, the Supreme Court has held that the substantive due process component of the Fourteenth Amendment does not provide the constitutional source of a right to be free from arrest or prosecution without probable cause, as claims of pretrial deprivations of liberty are addressed in the Fourth Amendment, which provides the explicit textual source for protection of these rights. *See Albright v. Oliver*, 510 U.S. 266, 273–74, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Wood v. Kesler*, 323 F.3d 872, 881–82 (11th Cir.2003) (holding that malicious prosecution is a violation of the Fourth Amendment, as malicious prosecution arises out of the Fourth Amendment right to be free from unreasonable seizures); *Whiting v. Traylor*, 85 F.3d 581, 586 (11th Cir.1996) ("A section 1983 plaintiff must always base his claim on the violation of a specific federal right."). Here, as Plaintiff alleges only that his Fourteenth Amendment rights, and not his Fourth Amendment rights, were violated as a result of his alleged "unlawful" and "malicious" arrest, imprisonment, and prosecution, Plaintiff fails to state a section 1983 claim upon which relief can be granted as a matter of law. *See* Compl. ¶¶ 78, 80.

Plaintiff has likewise failed to set forth any facts to overcome Chief Williams' statutory immunity, to wit, demonstrating that Chief Williams acted outside of the course and scope of his employment with bad faith, malicious purpose, "or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Here, aside from a conclusory, bald legal assertion that "there was malice on the part of Detective Paine, the City of Riviera Beach through its Police Department, and Chief Williams," the Complaint is devoid of any factual allegations demonstrating that Chief Williams acted with actual malice or in bad faith sufficient to pierce the immunity afforded to him under Florida Statute § 768.28(9). Compl. ¶ 86. Notably, while the Plaintiff alleges that Detective Paine and Mr. Honer falsified evidence and coerced witnesses, Plaintiff does not allege that Chief Williams personally participated in such conduct, actually directed Detective Paine to falsify evidence or coerce witnesses, or had actual knowledge of the alleged falsification of evidence and coercion of witnesses. *Id.* ¶¶ 24, 33, 47. For these reasons, Plaintiff fails to allege conduct by Chief Williams sufficient to establish the bad faith element required to remove the individual immunity that he is afforded under § 768.28(9). *See Bloom v. Alvereze*, 498 Fed.Appx. 867, 881 (11th Cir.2012) (holding that plaintiff failed to state intentional tort claims against police sergeant under Florida law where complaint alleged that sergeant approved search warrant "with knowledge of omissions and misstatements, and failed to inform the issuing judge that previous [ ] charges against [plaintiff] had been dismissed," reasoning that such allegations were insufficient to establish bad faith as required to waive sergeant's immunity under § 768.28(9)).

Even assuming that the Plaintiff has set forth sufficient factual allegations to establish the bad faith necessary to strip Chief Williams of the individual immunity he is afforded under § 768.28(9), Mr. Navarro still fails to plead a successful claim for malicious prosecution against Chief Williams. There are no allegations in the Complaint whatsoever that Chief Williams

was involved in the decision to prosecute the Plaintiff or otherwise caused the prosecution of Plaintiff. Accordingly, as Plaintiff fails to establish that Chief Williams was the legal cause of the commencement of the criminal proceedings against him, his state law malicious prosecution claim fails. *See DeRosa v. Rambosk*, 732 F.Supp.2d 1285, 1301 (M.D.Fla.2010) (dismissing claim of malicious prosecution against deputy where court found there was no evidence that a deputy "was involved in the decision of whether or not any of the plaintiffs should be prosecuted"); *Eubanks v. Gerwen*, 40 F.3d 1157, 1160–61 (11th Cir. 1994) (reversing denial of summary judgment for arresting officers on malicious prosecution claim because "none of the defendants were responsible for the decision to prosecute, and that none of them improperly influenced the decision to prosecute"). Accordingly, the Court dismisses Counts I and II of Plaintiff's Complaint as asserted against Chief Williams. As to Count II, Plaintiff, nonetheless, will be provided with an opportunity to allege the violation of a clearly established constitutional right sufficient to overcome the presumption of legitimacy generally accorded to official conduct. *See Gonzalez*, 325 F.3d at 1235 (quoting *United States Dep't of State v. Ray*, 502 U.S. 164, 179, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991)) ("[W]e generally accord . . . official conduct a presumption of legitimacy."). Because amendment as to the section 1983 claim would be futile, as the cause of action is time-barred, Count I is dismissed with prejudice.

### G. Detective Paine, ECF No. [12]

██ Detective Paine seeks dismissal of all causes of action asserted against him,

specifically Counts I, II, III, IV, V, and VII.[7] In whole, Mr. Navarro alleges that the investigation commenced on May 24, 2010, Compl. ¶ 21, and that Detective Paine "shopped the case" to prosecutors before Assistant State Attorney Miller "signed on" on the case, *id.* ¶ 42. Plaintiff alleges that, during the course of the investigation, a search pursuant to a warrant was conducted of MOD on November 23, 2010, by the City. *Id.* ¶ 49. Several months later, on June 3, 2011, PBSO and the City conducted a search of his home. *Id.* ¶ 56. Finally, on August 22, 2011, the charges filed against Plaintiff by the State Attorney's Office were nolle prossed. *Id.* ¶ 60. However, Plaintiff's Complaint, as has been established, is devoid of critical facts, including a coherent recitation of the circumstances leading to the Plaintiff's arrest, the date of Plaintiff's arrest, the charges for which Plaintiff was arrested, and whether Plaintiff was arrested pursuant to a warrant. *See generally* Compl. Aside from conclusory allegations that Detective Paine "falsify[ed] and doctor[ed] evidence," and "coerce[d] other potential witnesses," the Complaint lacks any allegations that set forth what evidence was falsified by Detective Paine, the names of any witnesses that Detective Paine coerced, the substance of the coerced testimony, and how and why such coerced testimony and falsified evidence lead to Plaintiff's arrest and conviction. *Id.* ¶¶ 24, 33, 47.

Accordingly, each of the counts asserted against Detective Paine fail, not only for insufficient pleading, but also due to the applicable statutes of limitation and abso-

---

**7.** To state a claim for intentional infliction of emotional distress under Florida law, the Plaintiff must allege: "(1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing emotional distress (3) severe emotional distress suffered by the Plaintiff; and (4) proof

that the conduct caused the severe emotional distress." *Gonzalez–Jimenez de Ruiz v. United States*, 231 F.Supp.2d 1187, 1199 (M.D.Fla. 2002) (citing *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir.1990); *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla.1985).

lute and/or qualified immunity, as discussed in detail above. *See, e.g.,* Fla. Stat. § 768.28(9)(a); *McNayr v. Kelly,* 184 So.2d 428, 433 (Fla.1966) ("[E]xecutive officials of government are absolutely privileged as to defamatory publications made in connection with the performance of the duties and responsibilities of their office to the same extent as such absolute immunity is afforded to members of the legislative and judicial branches of government."); *Busby,* 931 F.2d at 776. Furthermore, amendment would be futile due to the expired statute of limitations. *See, e.g., Christman v. Walsh,* 416 Fed.Appx. 841, 844 (11th Cir. 2011).

### H. City of Riviera Beach, ECF No. [13]

All seven counts in the Complaint are asserted against the City of Riviera Beach—and all seven fail as either time-barred, *see* Fla. Stat. § 95.11, or precluded by absolute and/or qualified immunity. *See, e.g.,* Fla. Stat. § 768.28(9)(a); *McNayr,* 184 So.2d at 433. The Court will provide Mr. Navarro with the opportunity to file a legally sufficient amended claim as to Count II against the City, consistent with the doctrine of immunity—but, of course, only to the extent that such claim is not time-barred. All other amendment would be futile for the multitude of reasons identified *infra.*

### IV. Conclusion

Plaintiff's Complaint is a quintessential "shotgun pleading"—and must be dismissed accordingly—as it incorporates a multitude of colorful facts, very few of which actually support the elements of the causes of action alleged therein. *See Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir.2002) (defining a shotgun complaint as containing "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first)

contain irrelevant factual allegations and legal conclusions"); *see also Osahar v. U.S. Postal Service,* 297 Fed.Appx. 863, 864 (11th Cir.2008) (term also refers to pleadings that are "replete with factual allegations and rambling legal conclusions"); *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 979–80 (11th Cir.2008) (condemning shotgun pleading that bunched together "untold causes of action" in one count). Of course, "[a] district court, before dismissing a complaint with prejudice because of a mere pleading defect, ordinarily must give a plaintiff one opportunity to amend the complaint and to cure the pleading defect." *Stevens v. Premier Cruises, Inc.,* 215 F.3d 1237, 1239 (11th Cir.2000) (citing *Isbrandtsen Marine Servs., Inc. v. M/V INAGUA Tania,* 93 F.3d 728, 734 (11th Cir.1996)). Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motions to Dismiss, **ECF Nos.** [4], [5], [7], [8], [10], [11], [12], [13], [26], are **GRANTED**. However, Ms. Navarro's request for attorney's fees and costs incorporated in her Motion to Dismiss, **ECF No.** [26], is **DENIED**.

2. The Palm Beach County Sheriff's Office, Sheriff Bradshaw, ASA Miller, the City of West Palm Beach, Ms. Hutchinson, and Detective Paine are **TERMINATED** from this action.

3. The City of West Palm Beach's Motion for Sanctions, **ECF No.** [34], is **GRANTED**. WPB is **DIRECTED** to file an affidavit of reasonable attorney's fees and costs **no later than July 1, 2016,** for the Court's consideration.

4. Plaintiff is **DIRECTED** to file an Amended Complaint addressing the deficiencies discussed herein **no later than July 11, 2016.**

a. The Court cautions that any cause of action premised upon false imprisonment or any other tort claim relating to the subject inter-agency search is precluded by the relevant Florida statute of limitations. Similarly, any cause of action relating to defamatory publications made in connection with the performance of official duties cannot withstand the absolute immunity defense that attaches therewith.

b. To the extent that Plaintiff seeks to maintain claims against Mr. Honer—as it is unclear whether Mr. Honer was served with the original Complaint—Plaintiff shall file proof of service of the Amended Complaint **no later than July 18, 2016.** If no proof of service is filed by this deadline, then the Court will terminate Mr. Honer from the instant action.

**DONE AND ORDERED** in Miami, Florida, this 28th day of June, 2016.